CURRY ADVISORS
A Professional Law Corporation
  K. Todd Curry (149360)
525 B Street, Ste. 1500
San Diego, California 92101
Telephone:  (619) 238-0004
Fax Number: (619) 238-0006

Counsel for Debtor / Debtor In Possession
Tierra Del Rey, LLC

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) CASE NO.  15-04253-LT11 |
| | ) |
| TIERRA DEL REY, LLC | ) Chapter 11 |
| | ) |
| | ) DEBTOR'S ***EMERGENCY MOTION*** FOR |
| Debtor. | ) ORDER (1) APPROVING CASH |
| | ) COLLATERAL STIPULATION; (2) |
| | ) AUTHORIZING DEBTOR'S |
| | ) TEMPORARY USE OF POST-PETITION |
| | ) BANK ACCOUNT; AND (3) |
| | ) AUTHORIZING PRE-PETITION |
| | ) RECEIVER TO RETAIN EXISTING CASH |
| | ) BALANCES TEMPORARILY |
| | ) |
| | ) DECLARATION OF CHERYL R. LEE |
| | ) |
| | ) DECLARATION OF K. TODD CURRY |
| | ) |
| | ) (No Hearing Scheduled) |
| | ) |
| | ) Dept:   Three |
| | ) Honorable Laura S. Taylor |

**TO FANNIE MAE, AP MORTGAGE COMPANY, INC., THE UNITED STATES**

**TRUSTEE, AND THE TWENTY LARGEST UNSECURED CREDITORS:**

/ / /

/ / /

Debtor / Debtor In Possession Tierra Del Rey, LLC (the "Debtor") files this emergency motion to (i) approve a proposed stipulation for use of cash collateral, (ii) authorize the Debtor to use a post-petition bank account temporarily until an official debtor in possession account can be opened, and (iii) authorize the pre-petition, court-appointed receiver to continue holding existing cash balances pending opening of an official debtor in possession bank account.  In support of this motion, the Debtor respectfully represents as follows:

**NOTICE OF EMERGENCY MOTION**

The instant motion is brought pursuant to Local Bankruptcy Rule 9013-9.  No hearing has been scheduled.  If you oppose the relief requested, you should contact the law clerk to the Honorable Laura S. Taylor, Chief United States Bankruptcy Judge, immediately.

**EMERGENCY MOTION**

**I.**

**SUMMARY OF PROPOSED CASH COLLATERAL STIPULATION**

As summary of the terms of the proposed Stipulation For Use of Cash Collateral ("Stipulation") for which approval is sought pursuant to this Emergency Motion is as follows:

1.      Parties with an interest or alleged interest in cash collateral are Fannie Mae (the first lien holder) and AP Mortgage Company, Inc. (the second lien holder).

2.      The cash collateral will be used exclusively to operate and maintain the Debtor's 80-unit apartment complex, and to make regular monthly payments in the amount of $28,365.63 (which is approximately $39 higher than reflected in the Budget attached to the Stipulation) to first lien holder, Fannie Mae.

3.      The Debtor may pay the expenses listed in the Budget attached as Exhibit 1 to the Stipulation (which is attached to this Emergency Motion as Exhibit "A").  A variance in the Budget of up to 5% is permitted without Fannie Mae's consent.  The Stipulation includes provisions for emergency expenditures that exceed the Budget.   The Debtor must keep accurate records and provide them to Fannie Mae upon request.  The right to use cash collateral can be terminated on 10 days' notice in the event of an uncured default under the Stipulation.  The

duration of the Stipulation is from the June 29, 2015 bankruptcy petition date through September 29, 2015, but it can be extended for up to 60 additional days by agreement of the Debtor and Fannie Mae.

4.    Adequate protection will be provided through the regular monthly payments to Fannie Mae in the amount of $28,356.63, plus, to the extent of the cash collateral used by the Debtor, a replacement lien in post-petition cash collateral having the same priority as Fannie Mae's pre-petition lien.  To the extent, if any, that the post-petition replacement lien is not sufficient to cover any use of pre-petition collateral, then Fannie Mae will have a priority administrative claim for the deficiency.  (The Debtor believes that Fannie Mae is over secured by millions of dollars such that there will be no deficiency.)

**II.**

**INTRODUCTION**

*A.    Debtor's Background*

The Debtor is a single asset real estate limited liability company owned by Bay Vista Methodist Heights, Inc. ("BVMH").  BVMH is a nonprofit public benefit corporation formed in 1966 by Rev. Grandison M. Phelps, Pastor of St. Paul United Methodist Church of San Diego, to provide affordable housing to the community.  At that time, BVMH entered into an agreement with U.S. Department of Housing and Urban Development ("HUD") to build a 268-unit affordable apartment complex, known as Bay Vista, located at 4802-4888 Logan Avenue, San Diego, California 92114.  The project was funded by HUD and financed by Prudential Insurance. The project was successfully completed and operated by BVMH for nearly 40 years.  BVMH sold the property in March of 2008 for $21,400,000.  BVMH agreed to commit 75% of the proceeds of the sale to a Housing Trust Fund with HUD.  HUD's role is to release portions of the Housing Trust Fund as BVMH requests in order to encourage further investment in much needed affordable housing in the Southern California market.

To continue its commitment to providing affordable housing, BVMH acquired the 177-unit Hillside Park, senior apartments located in Hemet, California for $12.35 Million in 2008. Also in 2008, BVMH acquired the 80-unit apartment complex known as Tierra Del Rey in La

1  Mesa, California (the "Real Property") for $7.53 Million.  Title to the Real Property is held by

2  the Debtor.  In 2010, the Real Property underwent renovations and improvements costing

3  approximately $2 million under the direction and supervision of BVMH.  BVMH funded these

4  improvements with the proceeds of the Housing Trust Fund and with the approval and support of

5  HUD.  Consistent with BVMH's non-profit status and its mission and commitment to provide

6  affordable housing, the Real Property is occupied by many low income tenants, a number of

7  whom receive rental assistance from HUD's section 8 housing program.

8  ***B.***       ***Liens and the Chapter 11 Filing***

9       The first priority lien on the Real Property is held by Fannie Mae.  The second priority

10  lien on the Real Property is held by AP Mortgage Company, Inc. ("AP").  AP is the successor in

11  interest to a loan owed by BVMH, which loan originally was secured only by certain vacant land

12  owned by BVMH, but which later was cross-collateralized with the Real Property.  When

13  BVMH fell behind in payments to the lender, the lender commenced the foreclosure process.  AP

14  acquired the loan after it was in default.  In April of 2015, AP obtained the appointment of a

15  receiver, William Hoffman, with respect to the Real Property.  Fannie Mae also declared a

16  default, alleging that the Debtor breached its loan documents by allowing a subordinate deed of

17  trust to be placed against the Real Property.  BVMH and the Debtor have been seeking

18  refinancing for the Real Property.

19       To preserve substantial equity in the Real Property (a recent appraisal reflects a value in

20  excess of $10.5 million, while encumbrances are believed to total less than $6 million), the

21  Debtor filed for Chapter 11 protection on June 29, 2015.

22                              **III.**

23              **THE DEBTOR REQUIRES IMMEDIATE USE OF**

24              **CASH COLLATERAL TO AVOID IRREPARABLE HARM.**

25       The Debtor believes that the cash generated by the Real Property is the cash collateral of

26  Fannie Mae as first priority lender, and may also be the cash collateral of AP, as second priority

27  lender.  Pursuant to Bankruptcy Code section 363(c), the Debtor moves to use the cash generated

28  by the Real Property for purposes related to maintaining and operating the Real Property.  11

1  U.S.C. § 363(c).  The Debtor's only source of funds is the cash collateral generated by the Real

2  Property.  Without *immediate* use of the cash collateral, the Debtor will be unable to pay, for

3  example, the following:  Payroll for the on-site manager and maintenance person, utilities such as

4  water and electric, pool maintenance, landscaping maintenance, and expenses to make vacated

5  units ready to re-let.  Inability to pay these expenses will impair the Debtor's business operations

6  and will impair the value of the Real Property.  In addition, the tenants will suffer and be required

7  to move, which will impair BVMH's core and historical function of providing affordable

8  housing, which is in short supply.  ***Based on the foregoing, the Debtor will suffer immediate***

9  ***and irreparable harm if it is not authorized to use cash collateral immediately.***

10       The Debtor and Fannie Mae have entered into the Stipulation, a copy of which is attached

11  as Exhibit "A."  Exhibit 1 to the Stipulation is the budget showing the proposed uses of cash

12  collateral.

13       Fannie Mae and AP will be adequately protected because the cash will be used to

14  preserve the value of the Real Property.  In addition, the Real Property has generated, and is

15  expected to continue to generate, approximately $70,000 per month in revenues per month.  With

16  a proposed total cash budget of almost $45,000 per month as reflected in Exhibit 1 to the

17  Stipulation, the Debtor expects to generate approximately $25,000 per month of excess cash,

18  which will provide additional protection to Fannie Mae and AP.  And, the budget includes

19  Fannie Mae's regular monthly payment of approximately $28,000, which will provide further

20  protection to Fannie Mae.  Furthermore, Fannie Mae will be granted, to the extent of the cash

21  collateral used by the Debtor, a replacement lien in post-petition cash collateral having the same

22  priority as Fannie Mae's pre-petition lien.  Finally, to the extent, if any, that the post-petition

23  replacement lien is not sufficient to cover any use of pre-petition collateral, then Fannie Mae will

24  have a priority administrative claim for the deficiency.  (The Debtor believes that Fannie Mae is

25  over secured by millions of dollars such that there will be no deficiency.)

26       ***If the Court is unwilling immediately to approve the Stipulation on a permanent basis,***

27  ***then the Debtor requests that the Court grant temporary authorization to use cash collateral***

28  / / /

1  *on the terms set forth in the Stipulation until such time as the Court is willing to approve the*

2  *Stipulation on a permanent basis.*

3                                             **IV.**

4                    **THE DEBTOR NEEDS TO USE A POST-PETITION,**

5                       **NON-DIP ACCOUNT TEMPORARILY.**

6        The U.S. Trustee's guidelines require that upon filing of the bankruptcy petition, Chapter

7  11 debtors must close existing bank accounts and open one or more new, Debtor In Possession

8  account(s) ("DIP Accounts") that meet certain requirements.  Until the Debtor engaged new

9  counsel on or about July 6, 2015, which was approximately one week after the bankruptcy filing,

10 the Debtor was unaware that the new accounts needed to be special DIP Accounts.  As a result,

11 on July 2, 2015, the Debtor opened a new, post-petition account at Point Loma Credit Union

12 ("PLCU") into which all receipts collected since the petition date (June 29, 2015) have been and

13 will be deposited.   (The pre-petition receiver still has possession of cash generated before June

14 29, 2015.)  Although the PLCU account is a post-petition account, it is not an official DIP

15 Account.

16        After engagement of new counsel, the Debtor promptly attempted to open official DIP

17 Accounts at Comerica Bank ("Comerica").  During that process, Comerica discovered and

18 informed the Debtor, and the Debtor learned for the first time, that it has been suspended by the

19 California Franchise Tax Board ("FTB") for failing to pay the annual tax applicable to limited

20 liability companies.  Comerica refused to open DIP Accounts for a suspended entity, so the

21 Debtor has been unable to open the accounts.  Needless to say, one of the Debtor's top priorities

22 now is to have the FTB suspension lifted.[1]

23        The Debtor's investigation revealed that the total amount allegedly owed to FTB is

24 $5,338.41, which includes penalties and other charges.  The relevant tax years are 2009, 2011,

25

26        _____

27        [1]  Notwithstanding the FTB suspension, the Debtor has the authority to proceed in this Chapter 11 case.  *See In re Feature Homes, Inc.*, 116 B.R. 731, 733 (Bankr. E.D. Cal. 1990); *see also Castro v. James J. Feder & Assocs.*, 1994 WL 202439, at *1 (9th Cir. May 24, 1994) (and cases cited).

28

2012, 2013, and 2014.  The investigation further revealed that the Debtor appears to have applied a few years ago for an exemption from FTB taxation due to the existing non-profit exempt status of its owner, BVMH.  However, it is unclear what became of that exemption request.  The FTB informed the Debtor that the most expedient manner of correcting the suspension is to file a new exemption request.  Therefore, the Debtor filed a new, expedited exemption request by sending the same to the FTB via overnight mail on July 14, 2015.

In light of the foregoing, the Debtor proposes to use the post-petition PLCU account temporarily, just until the FTB suspension is cleared and the Debtor can open official DIP accounts.  According to PLCU's website, it is a member of the National Association of Credit Unions, which insures accounts up to $250,000.  *See* www.plcu.com.  The Debtor does not expect to have more than $250,000 on account even over the next six months (although it is not expected it will take even that long to clear the FTB suspension).  Therefore, the funds will not be at risk while the account at PLCU is being used temporarily.  No party in interest will be prejudiced by this temporary solution.  Accordingly, the Debtor should be temporarily excused from opening the official DIP Accounts.[2]

## IV.

### THE PRE-PETITION RECEIVER SHOULD BE

### AUTHORIZED TO HOLD EXISTING FUNDS TEMPORARILY.

The pre-petition receiver, Mr. Hoffman, is not presently in possession of the Real Property (due to the Debtor's bankruptcy filing).  However, he still possesses a significant amount of cash collected during his tenure.  The Debtor believes that Mr. Hoffman presently holds approximately $78,000.

The Debtor proposes that Mr. Hoffman should be authorized to continue to hold those funds, notwithstanding Bankruptcy Code section 543(b), pending the Debtor's opening of official DIP Accounts.  The Debtor believes that Fannie Mae and AP are comfortable with this approach

---

[2]  If the Debtor is able to locate some bank that will open a DIP Account before the FTB suspension is lifted, then it will proceed with that bank without waiting for the suspension to be lifted.

and prefer this approach to depositing the funds into the post-petition PLCU account, and so the Debtor agrees to and proposes this approach. The Debtor requests such relief without conceding that Mr. Hoffman has any right or legal authority to retake possession of the Real Property. The Debtor submits that no party in interest will be prejudiced by maintaining the status quo.

**V.**

**ANTICIPATED OPPOSITION**

The Debtor's counsel notified counsel for Fannie Mae, counsel for AP, and counsel for the U.S. Trustee of the Debtor's intention to file this Emergency Motion. Fannie Mae's counsel indicated that opposition is not likely. AP's counsel and the U.S. Trustee's counsel indicated they did not yet know if their clients would oppose the Emergency Motion.

**VI.**

**CREDITORS ARE BEING NOTIFIED.**

The Court previously declined to enter an order on the Stipulation (which was filed as Docket No. 12) absent notice to creditors. Accordingly, in accordance with F.R. Bankr. P. 4004(b)(1)(A), (b)(1)(C) and Local Bankruptcy Rule 9013-9, the following notice of this Emergency Motion is being provided:

1.      Communication with counsel for Fannie Mae, counsel for AP, and counsel for the U.S. Trustee on July 16, 2015. Fannie Mae's counsel indicated likely no opposition; AP's counsel indicated AP could not yet commit, and the U.S. Trustee's counsel indicated that the U.S. Trustee could not yet commit.

2.       E-mail service of the Emergency Motion on counsel for Fannie Mae, counsel for AP, and counsel for the U.S. Trustee, in lieu of service of their respective clients directly, ***by agreement of counsel***.

3.      U.S. Mail service on creditors on the list filed under F.R. Bankr. P. 1007(d) (20 largest creditors).

/ / /

/ / /

1    WHEREFORE, the Debtor requests an order as follows:

2    1.    Approving the attached Stipulation; alternatively, if the Court is unable to approve

3    the Stipulation on a permanent basis without one or more hearings, the Debtor requests

4    immediate approval of the Stipulation on an interim basis pending final approval after one or

5    more hearings.

6    2.    Notwithstanding the U.S. Trustee's Guidelines and the provisions of the

7    Stipulation, authorizing the Debtor to use its post-petition account at Point Loma Credit Union

8    pending clearing of the FTB suspension and opening of official debtor in possession accounts.

9    3.    Authorizing the receiver, Mr. Hoffman, to retain possession of cash collateral that

10    presently is in his possession until the Debtor is able to open official debtor in possession

11    accounts; and

12    4.    Granting such other and further relief as the Court may deem just and proper

13

14    Dated: July 17, 2015                              CURRY ADVISORS
                                                        A Professional Law Corporation
15
                                                        /s/ K. Todd Curry
16                                          By:         _____
17                                                      K. Todd Curry
                                                        Counsel for Debtor / Debtor In Possession
18                                                      Tierra Del Rey, LLC

19

20

21

22

23

24

25

26

27

28

### DECLARATION OF CHERYL R. LEE

I, Cheryl R. Lee, declare as follows:

1.      I am the Chief Executive Officer of Bay Vista Methodist Heights, Inc. ("BVMH"), which is the manager and sole owner of debtor / debtor in possession Tierra Del Rey, LLC (the "Debtor").  I also am an attorney at law licensed in the states of California and Michigan.  I have personal knowledge of the facts set forth in this declaration and, if called and sworn as a witness, I would be competent to testify to such facts.

2.      The Debtor is a single asset real estate limited liability company owned by BVMH.  BVMH is a nonprofit public benefit corporation formed in 1966 by Rev. Grandison M. Phelps, Pastor of St. Paul United Methodist Church of San Diego, to provide affordable housing to the community.  At that time, BVMH entered into an agreement with U.S. Department of Housing and Urban Development ("HUD") to build a 268-unit affordable apartment complex, known as Bay Vista, located at 4802-4888 Logan Avenue, San Diego, California 92114.  The project was funded by HUD and financed by Prudential Insurance.  The project was successfully completed and operated by BVMH for nearly 40 years.  BVMH sold the property in March of 2008 for $21,400,000.  BVMH agreed to commit 75% of the proceeds of the sale to a Housing Trust Fund with HUD.  HUD's role is to release portions of the Housing Trust Fund as BVMH requests in order to encourage further investment in much needed affordable housing in the Southern California market.

3.      To continue its commitment to providing affordable housing, BVMH acquired the 177-unit Hillside Park, senior apartments located in Hemet, California for $12.35 Million in 2008.  Also in 2008, BVMH acquired the 80-unit apartment complex known as Tierra Del Rey in La Mesa, California (the "Real Property") for $7.53 Million.  Title to the Real Property is held by the Debtor.  In 2010, the Real Property underwent renovations and improvements costing approximately $2 million under the direction and supervision of BVMH.  BVMH funded these improvements with the proceeds of the Housing Trust Fund and with the approval and support of HUD.  Consistent with BVMH's non-profit status and its mission and commitment to provide

/ / /

affordable housing, the Real Property is occupied by many low income tenants, a number of whom receive rental assistance from HUD's section 8 housing program.

4.      The first priority lien on the Real Property is held by Fannie Mae.  The second priority lien on the Real Property is held by AP Mortgage Company, Inc. ("AP").  AP is the successor in interest to a loan owed by BVMH, which loan originally was secured only by certain vacant land owned by BVMH, but which later was cross-collateralized with the Real Property. When BVMH fell behind in payments to the lender, the lender commenced the foreclosure process.  AP acquired the loan after it was in default.  In April of 2015, AP obtained the appointment of a receiver, William Hoffman, with respect to the Real Property.  Fannie Mae also declared a default, alleging that the Debtor breached its loan documents by allowing a subordinate deed of trust to be placed against the Real Property.  BVMH and the Debtor have been seeking refinancing for the Real Property.

5.      To preserve substantial equity in the Real Property (a recent appraisal reflects a value in excess of $10.5 million, while encumbrances are believed to total less than $6 million), the Debtor filed for Chapter 11 protection on June 29, 2015.

6.      The Debtor's only source of funds is the cash generated by the Real Property. Without ***immediate*** use of the cash collateral, the Debtor will be unable to pay, for example, the following:  Payroll for the on-site manager and maintenance person, utilities such as water and electric, pool maintenance, landscaping maintenance, and expenses to make vacated units ready to re-let.  Inability to pay these expenses will impair the Debtor's business operations and will impair the value of the Real Property.  In addition, the tenants will suffer and be required to move, which will impair BVMH's core and historical function of providing affordable housing, which is in short supply.  ***I believe the Debtor will suffer immediate and irreparable harm if it is not authorized to use cash collateral immediately.***

7.      The Real Property has generated, and is expected to continue to generate, approximately $70,000 per month in revenues per month.  With a proposed total cash budget of almost $45,000 per month as reflected in Exhibit 1 to the attached Stipulation, I expect the Debtor will generate approximately $25,000 per month of excess cash.

8.    I believe that Fannie Mae is over secured by millions of dollars such that Fannie Mae will not have a deficiency claim.

9.    Until the Debtor engaged new counsel on or about July 6, 2015, which was approximately one week after the bankruptcy filing, we were unaware that the Debtor's new bank accounts needed to be special DIP Accounts.  As a result, on July 2, 2015, the Debtor opened a new, post-petition account at Point Loma Credit Union ("PLCU") into which all receipts collected since the petition date (June 29, 2015) have been and will be deposited.   (The pre-petition receiver still has possession of cash generated before June 29, 2015.)  Although the PLCU account is a post-petition account, it is not an official DIP Account.

10.    After engagement of new counsel, the Debtor promptly attempted to open official DIP Accounts at Comerica Bank ("Comerica").  During that process, Comerica discovered and informed us, and we learned for the first time, that the Debtor has been suspended by the California Franchise Tax Board ("FTB") for failing to pay the annual tax applicable to limited liability companies.  Comerica refused to open DIP Accounts for a suspended entity, so the Debtor has been unable to open the accounts.  One of the Debtor's top priorities now is to have the FTB suspension lifted.

11.    We learned through investigation that the total amount allegedly owed to FTB is $5,338.41, which includes penalties and other charges.  The relevant tax years are 2009, 2011, 2012, 2013, and 2014.  We also learned that the Debtor appears to have applied a few years ago for an exemption from FTB taxation due to the existing non-profit exempt status of its owner, BVMH.  However, it is unclear what became of that exemption request.  The FTB informed us that the most expedient manner of correcting the suspension is to file a new exemption request.  Therefore, we filed a new, expedited exemption request by sending the same to the FTB via overnight mail on July 14, 2015.

/ / /

/ / /

/ / /

/ / /

12.     I do not expect to have more than $250,000 on account even over the next six months, although I do not expect it will take even that long to clear the FTB suspension.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on the _17th_ day of July 2015 at San Diego, California.

Cheryl Lee

## DECLARATION OF K. TODD CURRY

I, K. Todd Curry, declare as follows:

1.      I am an attorney at law duly licensed to practice before this Court and all courts of the State of California, and I am a principal of Curry Advisors, A Professional Law Corporation, which is proposed counsel for the debtor / debtor in possession, Tierra Del Rey, LLC.  I have personal knowledge of the facts set forth in this declaration and, if called and sworn as a witness, I would be competent to testify to such facts.

2.      On July 16, 2015, I notified counsel for Fannie Mae, counsel for AP, and counsel for the U.S. Trustee of the Debtor's intention to file this Emergency Motion.  Fannie Mae's counsel indicated that opposition is not likely.  AP's counsel and the U.S. Trustee's counsel indicated they did not yet know if their clients would oppose the Emergency Motion.

3.      The Court previously declined to enter an order on the proposed Stipulation For Use of Cash Collateral, a true and correct copy of which is attached as Exhibit "A" (which was filed as Docket No. 12) absent notice to creditors.  Accordingly, in accordance with F.R. Bankr. P. 4004(b)(1)(A), (b)(1)(C) and Local Bankruptcy Rule 9013-9, the following notice of this Emergency Motion is being provided:

(1)      I communicated with counsel for Fannie Mae, counsel for AP, and counsel for the U.S. Trustee on July 16, 2015.  Fannie Mae's counsel indicated likely no opposition; AP's counsel indicated AP could not yet commit, and the U.S. Trustee's counsel indicated that the U.S. Trustee could not yet commit.

(2)      E-mail service of the Emergency Motion on counsel for Fannie Mae, counsel for AP, and counsel for the U.S. Trustee, *in lieu of* service of their respective clients directly, *by agreement of counsel*.  and

/ / /

/ / /

/ / /

/ / /

/ / /

1       (3)    U.S. Mail service on creditors on the list filed under F.R. Bankr. P. 1007(d) (20

2 largest creditors).

3       I declare under penalty of perjury under the laws of the United States of America that the

4 foregoing is true and correct and that this declaration was executed on the 17th day of July 2015

5 at San Diego, California.

6                           /s/ K. Todd Curry

7                           K. Todd Curry

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "A"

DAVID M. HERSHORIN, ESQ. (SBN 150618)
Email: davidh@hhlawgroup.com
**HERSHORIN & HENRY, LLP**
27422 Portola Parkway, Suite 360
Foothill Ranch, California 92610
Telephone: (949) 859-5600
Facsimile: (949) 859-5680

Attorneys for Secured Creditor FANNIE MAE

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>Tierra del Rey, LLC<br><br>         Debtor. | CASE NO.: 15-04253-LT11<br>Chapter 11<br><br>**STIPULATION BETWEEN DEBTOR IN POSSESSION AND SECURED CREDITOR FANNIE MAE FOR USE OF CASH COLLATERAL** |

       This Stipulation for Use of Cash Collateral ("**Stipulation**"), is entered into by and between Secured Creditor FANNIE MAE ("**Fannie Mae**"), on the one hand, and debtor Tierra del Rey, LLC ("**Debtor**")[1], on the other hand. This Stipulation is made with reference to the following facts:

---

[1] As of the filing date and the date of this Stipulation, Debtor was and remains suspended by the **California Franchise Tax Board** ("FTB"), and as such, under California Law, the Debtor is incapable of transacting business. The effect on the Debtor In Possession under federal law may be less clear. By entering into this Stipulation with the Debtor, Fannie Mae does not waive, and hereby reserves, any and all rights regarding the Debtor's suspended status.

# I.

## RECITALS

A.      On or about June 29, 2015 (the "**Petition Date**"), Debtor commenced this case by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**").

B.      On or about September 10, 2010, Centerline Mortgage Capital, Inc. ("**Original Lender**"), made a loan to Debtor, in the amount of $4,540,000.00 (the "**Loan**"), secured by, among other things, an 80 unit multi-family property, and the rents, issues and profits therefrom, located at and commonly known as 3675 King Street, La Mesa, California 91941 (the "**Property**").  The Loan is evidenced by that certain Multifamily Note, dated as of September 10, 2010 (the "**Note**"), from Debtor in favor of the Original Lender.

C.      The Loan is secured by that certain Multifamily Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (California) dated as of September 10, 2010 ("**Deed of Trust**"), from the Debtor in favor of the Original Lender, recorded on September 15, 2010 as Instrument Number 2010-0487955, in the County Recorder of San Diego County (the "**County Recording Office**").

D.      The Note, Deed of Trust, any modifications, amendments and restatements thereof, and any and all other documents evidencing, securing or in any matter relating to the Loan are hereinafter referred to collectively as the "**Loan Documents**."   Pursuant to the Loan Documents, the funds advanced under the Loan were secured by substantially all of the assets of the Debtor, including without limitation the Property, as more specifically described in the Loan Documents (the "**Collateral**").

E.      On or about September 15, 2010, Original Lender executed an "Assignment of Deed of Trust" ("**Assignment**"), assigning the Deed of Trust to

**STIPULATION FOR USE OF CASH COLLATERAL**

Fannie Mae.  The Assignment was recorded on September 15, 2010, as Instrument Number 2010-0487956, in the County Recording Office.

F.      Thereafter, Fannie Mae appointed Hunt Mortgage Group (formerly known as Centerline Capital Group), as Servicer ("**Servicer**") for Fannie Mae regarding the Loan, Loan Documents, Property, and Collateral.

G.      Fannie Mae contends that on or about March 27, 2015,  Fannie Mae's Servicer received a copy of another deed of trust recorded against the Property provided by another lender ("**Jr. Lienholder**"), and recorded in a junior position (herein, the "**Jr. Lienholder's Deed of Trust**"), against the Property. The Jr. Lienholder's Deed of Trust revealed that the Debtor had, on or about July 20, 2012, pledged the Property as collateral to another lender.  Fannie Mae contends that such pledge occurred without notice to or consent from Fannie Mae and that the same violated the terms of the Deed of Trust in favor of Fannie Mae.  Fannie Mae further contends that its Deed of Trust, at paragraphs 16 and 21, expressly prohibits the Debtor from making any such pledge or Transfer (as that term is defined in the Deed of Trust), and that such pledge or Transfer constitutes an Event of Default under the Deed of Trust.

H.      Fannie Mae contends that on or about April 20, 2015, Fannie Mae notified the Debtor, in writing, of the Event of Default under the Deed of Trust, accelerated the full amount of the outstanding balance of the Loan, and commenced enforcement of the breach of the Loan Documents by, among other things, preparing a complaint to enforce the terms of the Deed of Trust and appoint a receiver.

I.      Unbeknownst to Fannie Mae, Jr. Lienholder commenced on or about April 10, 2015, an action against the Debtor, and its principals, for among others things, foreclosure of the Jr. Lienholder Deed of Trust, in the San Diego County Superior Court, entitled *AP Mortgage Company, Inc. v. Bay Vista Methodist Heights*,

**STIPULATION FOR USE OF CASH COLLATERAL**

case number 37-2015-000-12044-CU-OR-CTL (the "**Action**"). In the Action, the Court appointed Bill Hoffman, as Receiver, pursuant to the Jr. Lienholder's request.

J.      On or about April 28, 2015, Fannie Mae moved, via an ex parte application, to intervene into the Action to enforce the terms of the Deed of Trust. The Court granted Fannie Mae's intervention based on its status as the senior secured creditor, allowed Fannie Mae to file its complaint in intervention, and amended the order appointing the receiver to confirm that the receiver will not be terminated unless and until Fannie Mae was paid in full all amounts owed under the Loan Documents.

K.      Fannie Mae contends that as of June 1, 2015, the total amount owed to Fannie Mae equaled $4,918,428.24, plus accrued interest, attorneys' fees, enforcement costs, default interest, and other amounts due under the Loan Documents.

L.      The Action is presently stayed as to the Debtor.

M.      The Debtor claims that it requires the use of the cash collateral in order to continue to operate the Property, pay vendors (other than the Debtor), and necessary costs of the Property's maintenance.

N.      The parties hereby enter into this Stipulation to enable the Debtor's use of cash collateral (as defined in section 3 below), and to enable the operation of the Debtor's Property to continue, under the terms, provisions, and conditions of this Stipulation.

## II.

## STIPULATION

**NOW, THEREFORE**, the following is hereby stipulated and agreed to by and among the parties:

1.      **Incorporation of Recitals and Existing Agreements**. The recitals are incorporated herein by this reference.  Except as modified by this Stipulation, all

**STIPULATION FOR USE OF CASH COLLATERAL**

terms, conditions and provisions of the Note and Deed of Trust shall remain in full force and effect.  Unless otherwise expressly agreed in writing, this Stipulation or any other document executed by Debtor in favor of Fannie Mae shall be considered to supplement and not replace any agreement previously entered into between the Debtor and Fannie Mae.

2. **No Senior Liens or Encumbrances.**  The Debtor represents that it is not aware of any liens or encumbrances senior to Fannie Mae's lien against the Property (except for the general lien to secure real property taxes) and acknowledges that Fannie Mae has specifically relied on this representation in its consent to this Stipulation. Invalidity of this representation is a specific event of default under this Stipulation giving rise to Fannie Mae's remedies set forth below.

3. **Definition of Cash Collateral**.  The rents, royalties, issues, profits, security deposits, insurance proceeds, and income of the Property constitute "**Cash Collateral**," as that term is used in this Stipulation, is defined as in sections 363(a) and 552(b) of the Bankruptcy Code.

4. **Debtor's Use of Fannie Mae's Cash Collateral**. Debtor's use of Fannie Mae's Cash Collateral is subject to each of the following terms and conditions as set forth herein below:

4.1    Commencing from June 29, 2015 through and including September 29, 2015 (the "**Termination Date**"), Debtor shall be authorized to use Fannie Mae's Cash Collateral in accordance with the terms of this Stipulation. Debtor's authorization to use Fannie Mae's Cash Collateral shall automatically expire at 5:00 p.m., California time on the Termination Date, unless Fannie Mae and Debtor extend the expiration date by written agreement for up to 60 days; Fannie Mae's consent to any extension may be withheld in its sole discretion. Approval of this Stipulation by the Court shall constitute authority by the Court that the parties may

**STIPULATION FOR USE OF CASH COLLATERAL**

extend the Stipulation for up to 60 days on similar terms without the necessity or requirement of further Court approval.

4.2     Debtor shall collect and promptly deposit all Cash Collateral in its Possession on the Petition Date or that comes into its possession thereafter in a segregated account entitled "Chapter 11 Debtor-in-Possession," in accordance with the U.S. Trustee's office ("**Cash Collateral Account**") to be maintained at an approved depository. No disbursements shall be made from the Cash Collateral Account, except in accordance with the provisions of this Stipulation, or pursuant to an order of the Bankruptcy Court after notice and a hearing.

4.3     From the Cash Collateral Account, the Debtor may use Cash Collateral to pay actual, necessary, and reasonable expenses of ordinary maintenance and operation of the Property which are incurred in the ordinary course of business as set forth in the budget attached as **Exhibit "1"** hereto ("**Budget**") and incorporated herein by this reference, or any later budget presented to and agreed to, in writing, by Fannie Mae; provided, however, that under no circumstances shall Debtor pay, directly or indirectly, any sums to members, managers, or partners, insiders, principals, affiliates of Debtor,  any entity or person holding a lien recorded against the Property junior or subordinate to Fannie Mae's Loan, or any pre-petition obligations (priority or otherwise), including without limitation the FTB.

4.4     Without the written consent of Fannie Mae the total payments for monthly expenses shall not exceed by more than five (5) percent of the total set forth in the Budget for each category of expense or by more than five (5) percent of all payments for all categories of expenses. No other payments or expenditures shall be made except as Fannie Mae may specifically authorize in writing.  Any unused sum remaining in any one category of expense may not be rolled over to a subsequent month, unless such rollover is because payment of an expense category was not yet due or made in such prior month.

**STIPULATION FOR USE OF CASH COLLATERAL**

4.5     Debtor may not use any Cash Collateral for any purpose or expense not set forth in the Budget without the prior written consent of Fannie Mae or an order of the Bankruptcy Court.

4.6     The Debtor shall continue to timely pay on a current basis monthly debt service payments (commencing with the payment due on or about July 1, 2015) in the same amount as when the Loan was in effect in the monthly amount of $28,365.63, exclusive of late fees or default interest which Fannie Mae contends is also due (this paragraph does not, in any way, reinstate what Fannie Mae contends is the fully accelerated and matured Loan, nor does it waive the Debtor's alleged right to seek to cure any defaults and to reinstate the Loan) to Fannie Mae set forth in Exhibit 1, and for any such payments, the Debtor agrees that turnover of such Cash Collateral pursuant to this Stipulation is voluntarily made.  The Debtor agrees that any turnover to Fannie Mae of any Cash Collateral and any application of the same by Fannie Mae to the Loan indebtedness shall not be deemed, in any manner, to constitute a setoff or other "action" as that term is used or defined in section 726 of the California Code of Civil Procedure, constitute a violation of the "one action rule" or be considered an effort by Fannie Mae to collect a deficiency judgment.

4.7     **Notice of Emergency Expenditures.**   In the event that an emergency develops requiring an immediate capital expenditure or an expenditure exceeding the Budget amount stated in subparagraph 4.3 above, Debtor shall give written notice by letter, facsimile or email transmission to Fannie Mae as follows:

David Hershorin
**Hershorin & Henry, LLP**
27422 Portola Parkway, Suite 360
Foothill Ranch, CA 92610
Telephone:  (949) 859-5600
Facsimile: (949) 859-5680
Email: davidh@hhlawgroup.com
**Counsel for Fannie Mae**

The notice shall contain a detailed description of such an emergency expense. If no response to the notice is received by counsel for Debtor within 48 hours after written notice is received by Fannie Mae's counsel (plus an additional 24 hours if the notice is given between 4 p.m. on a Friday and 7 a.m. on a Monday), the request shall be deemed approved. If the request is denied, Debtor may seek authority from the Court to make such expenditure from the Cash Collateral Account, on an expedited basis. If the Debtor represents to the Court that seeking Fannie Mae's advance approval of an emergency expense in accordance with the foregoing procedure before seeking Court authorization would lead to significant damage to the Property, the Debtor may seek Court authorization without first seeking Fannie Mae's approval pursuant to the foregoing procedure.  If an emergency requires an immediate expenditure of cash collateral in excess of the Budget amount stated in subparagraph 4.3 above to avoid significant damage to the Property after written notice to Fannie Mae (as set forth in paragraph 17 below) but before either Fannie Mae's approval or the Court's authorization can be obtained, the Debtor may make the expenditure but shall seek Fannie Mae's approval and (absent Fannie Mae's approval) the Court's authorization as soon as practicable.

4.8     Except as provided in the Budget, Debtor shall not make any payments of any kind whatsoever from the Cash Collateral Account to any person or entity holding a lien on the Collateral junior to the interest of Fannie Mae, or to members, managers, or partners, insiders, principals, or affiliates of Debtor without the prior written consent of Fannie Mae, an order of the Bankruptcy Court, or approval of an Insider Compensation Application.

4.9     Debtor shall provide to Fannie Mae copies of all filings heretofore or hereafter filed by Debtor with the Bankruptcy Court, and/or with the Office of the United States Trustee, within three (3) business days of such filing, if counsel to Fannie Mae does not otherwise receive them through the CM/ECF system.

4.10    Debtor shall not sell or dispose of any of its property outside of the ordinary course of business without the advance consent of Fannie Mae and an entered order from the Bankruptcy Court.

4.11    The automatic stay presently in effect in this case pursuant to section 362 of the Bankruptcy Code is hereby modified by the terms and conditions hereof, to effectuate the terms hereof and permit the adequate protection provisions in favor of Fannie Mae and the extent necessary to enable Fannie Mae to record the order as entered by the Bankruptcy Court approving this Stipulation, as Fannie Mae deems appropriate.

4.12    The Debtor shall prepare and maintain and upon reasonable notice provide to Fannie Mae for examination the following records:

A.    All records required to be kept or maintained by the Debtor, including those required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the rules of this Court and the United States Trustee.

B.    All records required to be kept or maintained by the terms and conditions of this Stipulation, and any other agreement executed by the Debtor in favor of Fannie Mae.

C.    In addition, the Debtor shall provide to Fannie Mae the following reports in a timely manner.

1.    On or before execution of this Stipulation, the Debtor shall provide Fannie Mae with copies of all documents filed by the Debtor with the Office of the U.S. Trustee, and thereafter concurrently with such filing, provide Fannie Mae with copies of all documents filed by the Debtor with the Office of the U.S. Trustee.

2.    On or before the last business day of each month during the term of this Stipulation, beginning with the first such report due by the Debtor, the Debtor shall provide Fannie Mae with copies of the monthly operating reports.

**STIPULATION FOR USE OF CASH COLLATERAL**

3.      The Debtor shall also provide Fannie Mae in a timely and prompt fashion all reports or other information required by the Note, the Deed of Trust, and any other agreement executed by the Debtor in favor of Fannie Mae or any other agreement which may in the future be executed by the Debtor in favor of Fannie Mae.

D.      Inspection Rights. Fannie Mae is authorized, in its discretion, to reasonably audit the Debtor's books and records, and to inspect and/or appraise the Property.  Fannie Mae or its designated representative or agent shall be entitled on reasonable notice to inspect the books and records of the Debtor at any time during normal business hours. Fannie Mae shall be entitled to have its appraiser visit the Property upon reasonable notice to inspect and appraise the Property.

E.      In addition to the foregoing inspection rights, Fannie Mae shall have and be entitled to all inspections or other information required by the Note, the Deed of Trust, and any other agreements executed by the Debtor in favor of Fannie Mae or any other agreement which may in the future be executed by the Debtor in favor of Fannie Mae.

F.      Insurance.  The Debtor shall maintain insurance at all times for the Property and shall provide evidence of the same to Fannie Mae.

4.13    **Default.**   If Debtor fails to fully and timely perform any provision, term or condition of this Stipulation, Debtor shall be in default under this Stipulation.  In the event of a default, Fannie Mae shall give written notice to Debtor of the default, the actions required to cure such default, and its withdrawal of consent to the use of its Cash Collateral. Unless cured, Debtor's right to use Cash Collateral shall immediately cease on the later of ten (10) days from the mailing of such written notice thereof and Debtor shall immediately sequester and account for all Cash Collateral produced by and/or derived from the Property and/or Replacement Liens. Notice of any default shall be provided to Debtor under this paragraph to Debtor's

STIPULATION FOR USE OF CASH COLLATERAL

counsel by fax, regular mail, overnight delivery or hand delivery at the following address:

> K. Todd Curry
> Curry Advisors, a Professional Law Corporation
> 525 B Street, Ste. 1500
> San Diego, CA 92101
> Phone: 619.238.0004
> Fax: 619.238.0006
> Email: tcurry@currylegal.com

4.14   **Additional Events of Default**.   Additionally, the occurrence of any of the following shall also be an event of default hereunder:

(a)   Entry of an order converting the Debtor's Chapter 11 case to Chapter 7 of the Bankruptcy Code, which order is not stayed within fourteen (14) days of the entry thereof;

(b)   Entry of an order dismissing the Chapter 11 case, which order is not stayed within fourteen (14) days of the entry thereof;

(c)   Entry of an order by the Bankruptcy Court appointing a Chapter 11 trustee or examiner in the Debtor's bankruptcy case, which order is not stayed within fourteen (14) days of the entry thereof;

(d)   Entry of an order granting Fannie Mae relief from the automatic stay;

(e)   The filing of any motion by the Debtor to obtain senior or *pari passu* DIP financing without the consent of Fannie Mae;

(f)   Failure of the Debtor to comply with any material terms, conditions, or covenants contained in this Order; and

(g) The reversal, vacatur, stay, amendment, supplementation or other modification of the order approving this Stipulation (without Fannie Mae's consent) in a manner which shall, materially and adversely affect the rights of Fannie Mae hereunder, or shall materially and adversely affect the priority of any or all of Fannie Mae's Collateral or security interests or adequate protection.

- 11-

**STIPULATION FOR USE OF CASH COLLATERAL**

5.    **Replacement Liens**. In addition to the rights granted to Fannie Mae under the Loan Documents and section 552(b), for any Cash Collateral used by Debtor, Fannie Mae shall be granted replacement liens ("**Replacement Liens**") on and security interests in all of Debtor's post-petition Collateral, to the same extent, validity and priority as Fannie Mae's pre-petition liens. In the event of default by Debtor, and relief from the automatic stay, Fannie Mae may, subject to the rights of senior creditors in the Collateral, foreclose such replacement liens under the pre-petition Loan Documents. The replacement liens granted herein shall not create any lien upon any claims for relief that Debtor might have under 11 U.S.C. §§ 506(c), 544, 545, 547, 548, and 549. The replacement liens and security interests granted herein are valid, enforceable, and fully perfected, and no filing or recordation or any other act in accordance with any applicable local, state, or federal law is necessary to create or perfect such lien and security interest. Debtor shall execute and deliver to Fannie Mae such documents as Fannie Mae may reasonably request to evidence the replacement liens granted herein. To the extent that Fannie Mae's lien on all post-petition Cash Collateral is insufficient to compensate Fannie Mae for the pre-petition cash collateral, Fannie Mae shall also be allowed an administrative priority claim in accordance with the provisions of 11 U.S.C. §§ 507(b) for any deficiency.

6.    **Stipulation Binding**. The terms and conditions of this Stipulation shall be binding on the parties hereto and their assigns immediately upon the final approval hereof by the Bankruptcy Court.  All provisions of this Agreement are binding upon this estate, all of Debtor's successors, any successor estate, all creditors, and any and all other actual or potential successors in interest to Debtor, including without limitation, any trustee appointed in this Chapter 11 case, any trustee in a Chapter 7 case if the case is converted, any committees formed in either this Chapter 11 case or following any conversion of this case, and/or any successor estates which are, or which may hereafter be, appointed, created, or approved.

**STIPULATION FOR USE OF CASH COLLATERAL**

7. **No Impact on Right to Seek Other or Different Relief**. Nothing contained in this Stipulation and the order thereon shall be deemed or be construed to waive, reduce, or otherwise diminish the rights of Fannie Mae to seek additional or different adequate protection of its interests under the Loan Documents, to seek relief from the automatic stay, or to take any other action in this bankruptcy case, including but not limited to, seeking relief from the automatic stay. Furthermore, nothing contained in this Stipulation shall be deemed or be construed to be an admission that Fannie Mae is adequately protected.

8. **Conditions Precedent.** It shall be a condition precedent to the effectiveness of this Agreement that each and all of the following occur:

8.1 All parties for whom a signature space is provided below shall execute and deliver to Fannie Mae this Agreement, and each other document required to be executed and delivered hereunder; and

8.2 The United States Bankruptcy Court shall enter an order approving the terms and effectiveness of this Agreement.

9. **Neutral Construction of the Stipulation**. This Stipulation is a product of negotiation among the parties hereto and represents the jointly conceived, bargained-for, and agreed-upon language mutually determined by the parties to express their intentions in entering into this Stipulation. Any ambiguity or uncertainty in this Stipulation shall be deemed to be caused by or attributable to the parties hereto collectively. In any action to enforce or interpret this Stipulation, the Stipulation shall be construed in a neutral manner, and no term or provision of this Stipulation, or the Stipulation as a whole, shall be construed more or less favorably to any one party to this Stipulation.

10. **Representations and Warranties**. The parties hereto further represent and warrant to each other as follows:

- 13-

**STIPULATION FOR USE OF CASH COLLATERAL**

10.1    Each party hereto has received independent legal advice from attorneys of that party's choice with respect to the advisability of entering into this Stipulation, and prior to the execution of this Stipulation, that party's attorney reviewed this Stipulation and discussed the agreement with the party, and the party has made all desired changes.

10.2    Except as expressly stated in this Stipulation, no party hereto has made any statement or representation to any other party hereto regarding the facts relied upon by said party in entering into this Stipulation, and each party hereto specifically does not rely upon any statement, representation, or promise of any other party hereto in executing this Stipulation, except as expressly stated in this Stipulation.

11.    **Headings**. The headings set forth herein are inserted for convenience of the parties only, and shall not be used to interpret or construe or in any way affect the meaning of the terms and provisions of this Stipulation.

12.    **Integration**. Except as expressly provided in this Stipulation, this Stipulation is the final written expression and complete and exclusive statement of all the agreements, conditions, promises and covenants among the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings and discussions among the parties and/or their respective counsel with respect to the subject matter conveyed hereby. Any amendment or modification of this Stipulation, in order to be legally binding, must be in writing specifically referring to the Stipulation and signed by duly authorized representatives of all parties hereto.

13.    **Counterpart Signatures.** This Stipulation may be signed in counterparts and signatures may be exchanged electrically or by facsimile.

14.    **Bankruptcy Court Order**. This Stipulation shall be submitted forthwith to the Bankruptcy Court for approval and, in that regard, Debtor and/or Fannie Mae

**STIPULATION FOR USE OF CASH COLLATERAL**

may give such notice and opportunity to be heard as is required under Bankruptcy Rule 4001, Local Bankruptcy Rule 4001-1 or other applicable law.

15. **Reservation of Rights.** Except as provided in this Agreement, Fannie Mae specifically reserves all of its rights, interests and remedies at law and in equity, or otherwise, with respect to, in connection with or relating to the Loan Documents, this Agreement and any other agreements, instruments, facts or matters relating to any of the foregoing. This reservation of rights is not intended and shall not be construed as exclusive.

16. No Violation of Local Rules.  The parties represent that to the best of their knowledge, this Stipulation contains no provision that violates the guidelines set forth in Appendix D2 or Appendix D3 of the Local Bankruptcy Rules.

17. **Notices.**  Any notice required to be given hereunder shall be given as follows:

*If to Fannie Mae:*

> David Hershorin
> **Hershorin & Henry, LLP**
> 27422 Portola Parkway, Suite 360
> Foothill Ranch, CA 92610
> Telephone:  (949) 859-5600
> Facsimile: (949) 859-5680
> Email: davidh@hhlawgroup.com

*If to Debtor:*

> K. Todd Curry
> Curry Advisors, a Professional Law Corporation
> 525 B Street, Ste. 1500
> San Diego, CA 92101
> Telephone: 619.238.0004
> Facsimile: 619.238.0006
> Email: tcurry@currylegal.com

**STIPULATION FOR USE OF CASH COLLATERAL**

1  NOW THEREFORE, the parties, by and through their counsel, stipulate to the

2  foregoing use of Cash Collateral from the Petition Date through September 29, 2015.

3

4  HERSHORIN & HENRY LLP

5  By: _____

6     DAVID M. HERSHORIN
       Attorneys for Fannie Mae

7

8  CURRY ADVISORS, A PROFESSIONAL LAW CORPORATION

9

10  By: _K. Todd Curry_____

11     K. TODD CURRY
        Attorneys for Debtor TIERRA DEL REY, LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-

**EXHIBIT 1—BUDGET**

<u>**RECURRING  MONTHLY COSTS**</u>

FNMA Mtg. Note                             $28, 326.51  (estimate—amount paid will be per loan documents)

Personnel Costs:                           $  5,208.00  ($2,403.85 bi-weekly payroll)
(Property Manager,
Maintenance Worker)

**Utilities:**

EDCO Waste Management          $1,380.95
Helix Water District                     $3,405.81
San Diego Gas & Electric           $2,975.00

**Necessary Vendors:**

Landscaping/Groundskeeper      $1,000.00
HD Supply                                    $  200.00
(Office Supplies and Unit Small
Equipment Repair & Replacement parts)

Cox Cable                                    $ 335.50
(Internet, Clubhouse Cable &
Office Telephones)

Azul Pool & Spa                          $ 300.00
Pest Control                                $   65.00

SSD Systems Security                  $   94.50

Unit Turnover Costs:                    <u>$1,500.00</u>

**TOTAL:**                                       **$44,791.27**

**Extraordinary, One-Time Expenses:**

<u>Unusual</u> Rent Ready Expenses:      Up to $5,000.00 to re-let the units the receiver caused to be vacated.

Property insurance:                        $9,031.00 (only if not paid by loan servicer through impounds)