**CSD 1001A** [11/15/04]

Name, Address, Telephone No. & I.D. No.

CURRY ADVISORS, A Professional Law Corporation
 K. Todd Curry (149360)
525 B Street, Ste. 1500
San Diego, CA 92101
Tel: (619) 238-0004 | Fax: (619) 238-0006
Proposed counsel for Debtor / Debtor In Possession

**Order Entered on**
July 23, 2015
**by Clerk U.S. Bankruptcy Court**
**Southern District of California**

**UNITED STATES BANKRUPTCY COURT**
SOUTHERN DISTRICT OF CALIFORNIA
325 West "F" Street, San Diego, California 92101-6991

In Re

TIERRA DEL REY, LLC

Debtor.

BANKRUPTCY NO. **15-04253-LT11**

Date of Hearing: July 21, 2015
Time of Hearing: 2:30 p.m.
Name of Judge: Hon. Laura S. Taylor

## COURT MODIFIED
## ORDER ON

## DEBTOR'S EMERGENCY MOTION RE USE OF CASH COLLATERAL AND OTHER RELIEF

IT IS ORDERED THAT the relief sought as set forth on the continuation pages attached and numbered two (2)

through ___4___ with exhibits, if any, for a total of ___22___ pages, is granted. Motion/Application Docket Entry No. ___15___

//

//

//

//

//

//

DATED:    July 23, 2015

Judge, United States Bankruptcy Court

Signature by the attorney constitutes a certification under
Fed. R. of Bankr. P. 9011 that the relief in the order is the
relief granted by the court.

Submitted by:

Curry Advisors, A Professional Law Corp.
(Firm name)

By: /s/ K. Todd Curry
Attorney for ☑ Movant ☐ Respondent

CSD 1001A

CSD 1001A [11/15/04]  (Page 2)
***ORDER ON DEBTOR'S EMERGENCY MOTION RE USE***
***OF CASH COLLATERAL AND OTHER RELIEF***
DEBTOR: TIERRA DEL REY, LLC                                    CASE NO.: 15-04253-LT11

The Debtor's Emergency Motion for Order (1) Approving Cash Collateral Stipulation, (2) Authorizing Debtor's Temporary Use of Post-Petition Bank Account, and (3) Authorizing Pre-Petition Receiver to Retain Existing Cash Balances Temporarily (the "Emergency Motion") came on for hearing on July 21, 2015, at 2:30 p.m., in Department Three of the above-entitled Court, the Honorable Laura S. Taylor, Chief United States Bankruptcy Judge, presiding. Appearances were noted on the record at the hearing.

The Court having considered the Emergency Motion and the representations of counsel who appeared at the hearing, notice appearing proper under the circumstances, and good cause appearing therefor,

IT IS HEREBY ORDERED AS FOLLOWS:

1. The cash collateral stipulation ("Stipulation"), which was attached to the Emergency Motion as Exhibit "A" and which is attached to this Order as Exhibit "A," is approved and is made an order of this Court, subject to the modifications set forth in this Order.

2. The budget attached as Exhibit 1 to the Stipulation shall be deemed modified to include quarterly fees payable to the United States Trustee.

3. Consistent with Guideline No. 2 contained in Appendix D2 of the Local Bankruptcy Rules, notwithstanding any other provision of the Stipulation, the estate and parties in interest shall not be bound by (i) provisions or findings of fact (if any) contained in the Stipulation with respect to the validity, perfection, or amount of any secured creditor's pre-petition lien or debt, or (ii) any waiver of claims against any secured creditor.

4. In the Stipulation, at page 9, paragraph 4.10, line 1, the words "its property" shall be deemed changed to "the Collateral" (which has the meaning defined in the Stipulation at page 2,

paragraph D, lines 23-24).

5.   In the Stipulation, at page 9, paragraph 4.10, line 2, the word "and" shall be deemed

changed to "or."

6.   Counsel for AP Mortgage Company, Inc. ("AP") shall be provided with the same

reports, documents, and inspection rights to which Fannie Mae is entitled pursuant to the

Stipulation.  Any such reports and documents shall be provided as follows:  Michael Wright,

5190 Governor Drive, #207, San Diego, CA 92122, mwright@mikewrightlaw.com.

7.   Notwithstanding the U.S. Trustee's Guidelines and the provisions of the Stipulation, the Debtor shall be and hereby is authorized to use its post-petition account at Point Loma Credit Union ("PLCU") pending clearing of the Franchise Tax Board suspension and opening of official debtor in possession accounts.  Provided, however, that the total on deposit in the PLCU account shall not exceed $250,000.  Further provided, however, that in the event the Debtor will have in its possession more than $250,000, then, upon either further Order of the Court or the written consent of counsel for Fannie Mae, AP, and the U.S. Trustee, the Debtor shall open such additional non-debtor-in-possession accounts as needed to ensure that all funds on deposit have appropriate insurance against loss. **Debtor shall provide to U.S. Trustee, Fannie Mae, and AP Mortgage, through email, copies of all PLCU bank statements upon receipt by Debtor, copies of all check images, to extent readily available, and notification and copies of any wire transfers in the amount of $100,000.00 or over.**  The Debtor shall open and commence using official debtor in possession accounts at the earliest possible time, whereupon the foregoing restrictions shall not apply.

8.   Provided that his receiver's bond remains in place and has not been exonerated, the

pre-petition receiver, William Hoffman, shall be and hereby is authorized to retain possession of

cash collateral that presently is in his possession until the Debtor is able to open official debtor in

/ / /

CSD 1001A [11/15/04]  (Page 4)
*ORDER ON DEBTOR'S EMERGENCY MOTION RE USE*
*OF CASH COLLATERAL AND OTHER RELIEF*
DEBTOR: TIERRA DEL REY, LLC                                    CASE NO.: 15-04253-LT11

---

possession accounts, whereupon such cash collateral shall be deposited into an official debtor in

possession cash collateral account.

9. Parties in interest retain their rights concerning the Debtor's suspended status with the

Franchise Tax Board.

Approved as to form:

      HERSHORIN & HENRY, LLP

By: _____
      David M. Hershorin
      Thomas Van
      Counsel for Fannie Mae

By: _____
      Michael Wright
      Counsel for AP Mortgage Company, Inc.

      TIFFANY L. CARROLL
      ACTING UNITED STATES TRUSTEE

By: _____
      Kristin T. Mihelic
      Trial Attorney for the Acting United States Trustee

# EXHIBIT "A"

DAVID M. HERSHORIN, ESQ. (SBN 150618)
Email: davidh@hhlawgroup.com
**HERSHORIN & HENRY, LLP**
27422 Portola Parkway, Suite 360
Foothill Ranch, California 92610
Telephone:  (949) 859-5600
Facsimile:   (949) 859-5680

Attorneys for Secured Creditor FANNIE MAE

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

In re:

Tierra del Rey, LLC

        Debtor.

CASE NO.:  15-04253-LT11
Chapter 11

**STIPULATION BETWEEN DEBTOR IN POSSESSION AND SECURED CREDITOR FANNIE MAE FOR USE OF CASH COLLATERAL**

      This Stipulation for Use of Cash Collateral ("**Stipulation**"), is entered into by and between Secured Creditor FANNIE MAE ("**Fannie Mae**"), on the one hand, and debtor Tierra del Rey, LLC ("**Debtor**")[1], on the other hand.  This Stipulation is made with reference to the following facts:

---

[1] As of the filing date and the date of this Stipulation, Debtor was and remains suspended by the **California Franchise Tax Board** ("FTB"), and as such, under California Law, the Debtor is incapable of transacting business.  The effect on the Debtor In Possession under federal law may be less clear.  By entering into this Stipulation with the Debtor, Fannie Mae does not waive, and hereby reserves, any and all rights regarding the Debtor's suspended status.

- 1 -

# I.

## RECITALS

A.   On or about June 29, 2015 (the "**Petition Date**"), Debtor commenced this case by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**").

B.   On or about September 10, 2010, Centerline Mortgage Capital, Inc. ("**Original Lender**"), made a loan to Debtor, in the amount of $4,540,000.00 (the "**Loan**"), secured by, among other things, an 80 unit multi-family property, and the rents, issues and profits therefrom, located at and commonly known as 3675 King Street, La Mesa, California 91941 (the "**Property**").  The Loan is evidenced by that certain Multifamily Note, dated as of September 10, 2010 (the "**Note**"), from Debtor in favor of the Original Lender.

C.   The Loan is secured by that certain Multifamily Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing (California) dated as of September 10, 2010 ("**Deed of Trust**"), from the Debtor in favor of the Original Lender, recorded on September 15, 2010 as Instrument Number 2010-0487955, in the County Recorder of San Diego County (the "**County Recording Office**").

D.   The Note, Deed of Trust, any modifications, amendments and restatements thereof, and any and all other documents evidencing, securing or in any matter relating to the Loan are hereinafter referred to collectively as the "**Loan Documents**."   Pursuant to the Loan Documents, the funds advanced under the Loan were secured by substantially all of the assets of the Debtor, including without limitation the Property, as more specifically described in the Loan Documents (the "**Collateral**").

E.   On or about September 15, 2010, Original Lender executed an "Assignment of Deed of Trust" (**"Assignment"**), assigning the Deed of Trust to

- 2-

**STIPULATION FOR USE OF CASH COLLATERAL**

Fannie Mae.  The Assignment was recorded on September 15, 2010, as Instrument Number 2010-0487956, in the County Recording Office.

F.    Thereafter, Fannie Mae appointed Hunt Mortgage Group (formerly known as Centerline Capital Group), as Servicer ("**Servicer**") for Fannie Mae regarding the Loan, Loan Documents, Property, and Collateral.

G.    Fannie Mae contends that on or about March 27, 2015,  Fannie Mae's Servicer received a copy of another deed of trust recorded against the Property provided by another lender ("**Jr. Lienholder**"), and recorded in a junior position (herein, the "**Jr. Lienholder's Deed of Trust**"), against the Property. The Jr. Lienholder's Deed of Trust revealed that the Debtor had, on or about July 20, 2012, pledged the Property as collateral to another lender.  Fannie Mae contends that such pledge occurred without notice to or consent from Fannie Mae and that the same violated the terms of the Deed of Trust in favor of Fannie Mae.  Fannie Mae further contends that its Deed of Trust, at paragraphs 16 and 21, expressly prohibits the Debtor from making any such pledge or Transfer (as that term is defined in the Deed of Trust), and that such pledge or Transfer constitutes an Event of Default under the Deed of Trust.

H.    Fannie Mae contends that on or about April 20, 2015, Fannie Mae notified the Debtor, in writing, of the Event of Default under the Deed of Trust, accelerated the full amount of the outstanding balance of the Loan, and commenced enforcement of the breach of the Loan Documents by, among other things, preparing a complaint to enforce the terms of the Deed of Trust and appoint a receiver.

I.    Unbeknownst to Fannie Mae, Jr. Lienholder commenced on or about April 10, 2015, an action against the Debtor, and its principals, for among others things, foreclosure of the Jr. Lienholder Deed of Trust, in the San Diego County Superior Court, entitled *AP Mortgage Company, Inc. v. Bay Vista Methodist Heights,*

- 3-

STIPULATION FOR USE OF CASH COLLATERAL

case number 37-2015-000-12044-CU-OR-CTL (the "**Action**"). In the Action, the Court appointed Bill Hoffman, as Receiver, pursuant to the Jr. Lienholder's request.

J.    On or about April 28, 2015, Fannie Mae moved, via an ex parte application, to intervene into the Action to enforce the terms of the Deed of Trust. The Court granted Fannie Mae's intervention based on its status as the senior secured creditor, allowed Fannie Mae to file its complaint in intervention, and amended the order appointing the receiver to confirm that the receiver will not be terminated unless and until Fannie Mae was paid in full all amounts owed under the Loan Documents.

K.    Fannie Mae contends that as of June 1, 2015, the total amount owed to Fannie Mae equaled $4,918,428.24, plus accrued interest, attorneys' fees, enforcement costs, default interest, and other amounts due under the Loan Documents.

L.    The Action is presently stayed as to the Debtor.

M.    The Debtor claims that it requires the use of the cash collateral in order to continue to operate the Property, pay vendors (other than the Debtor), and necessary costs of the Property's maintenance.

N.    The parties hereby enter into this Stipulation to enable the Debtor's use of cash collateral (as defined in section 3 below), and to enable the operation of the Debtor's Property to continue, under the terms, provisions, and conditions of this Stipulation.

## II.

## STIPULATION

**NOW, THEREFORE**, the following is hereby stipulated and agreed to by and among the parties:

1.    **Incorporation of Recitals and Existing Agreements**. The recitals are incorporated herein by this reference.  Except as modified by this Stipulation, all

terms, conditions and provisions of the Note and Deed of Trust shall remain in full force and effect.  Unless otherwise expressly agreed in writing, this Stipulation or any other document executed by Debtor in favor of Fannie Mae shall be considered to supplement and not replace any agreement previously entered into between the Debtor and Fannie Mae.

2.    **No Senior Liens or Encumbrances.**  The Debtor represents that it is not aware of any liens or encumbrances senior to Fannie Mae's lien against the Property (except for the general lien to secure real property taxes) and acknowledges that Fannie Mae has specifically relied on this representation in its consent to this Stipulation. Invalidity of this representation is a specific event of default under this Stipulation giving rise to Fannie Mae's remedies set forth below.

3.    **Definition of Cash Collateral**.  The rents, royalties, issues, profits, security deposits, insurance proceeds, and income of the Property constitute "**Cash Collateral,**" as that term is used in this Stipulation, is defined as in sections 363(a) and 552(b) of the Bankruptcy Code.

4.    **Debtor's Use of Fannie Mae's Cash Collateral**. Debtor's use of Fannie Mae's Cash Collateral is subject to each of the following terms and conditions as set forth herein below:

4.1    Commencing from June 29, 2015 through and including September 29, 2015 (the "**Termination Date**"), Debtor shall be authorized to use Fannie Mae's Cash Collateral in accordance with the terms of this Stipulation. Debtor's authorization to use Fannie Mae's Cash Collateral shall automatically expire at 5:00 p.m., California time on the Termination Date, unless Fannie Mae and Debtor extend the expiration date by written agreement for up to 60 days; Fannie Mae's consent to any extension may be withheld in its sole discretion. Approval of this Stipulation by the Court shall constitute authority by the Court that the parties may

**STIPULATION FOR USE OF CASH COLLATERAL**

Signed by Judge Laura Stuart Taylor July 23, 2015

extend the Stipulation for up to 60 days on similar terms without the necessity or requirement of further Court approval.

        4.2      Debtor shall collect and promptly deposit all Cash Collateral in its Possession on the Petition Date or that comes into its possession thereafter in a segregated account entitled "Chapter 11 Debtor-in-Possession," in accordance with the U.S. Trustee's office ("**Cash Collateral Account**") to be maintained at an approved depository. No disbursements shall be made from the Cash Collateral Account, except in accordance with the provisions of this Stipulation, or pursuant to an order of the Bankruptcy Court after notice and a hearing.

        4.3      From the Cash Collateral Account, the Debtor may use Cash Collateral to pay actual, necessary, and reasonable expenses of ordinary maintenance and operation of the Property which are incurred in the ordinary course of business as set forth in the budget attached as **Exhibit "1"** hereto ("**Budget**") and incorporated herein by this reference, or any later budget presented to and agreed to, in writing, by Fannie Mae; provided, however, that under no circumstances shall Debtor pay, directly or indirectly, any sums to members, managers, or partners, insiders, principals, affiliates of Debtor,  any entity or person holding a lien recorded against the Property junior or subordinate to Fannie Mae's Loan, or any pre-petition obligations (priority or otherwise), including without limitation the FTB.

        4.4      Without the written consent of Fannie Mae the total payments for monthly expenses shall not exceed by more than five (5) percent of the total set forth in the Budget for each category of expense or by more than five (5) percent of all payments for all categories of expenses. No other payments or expenditures shall be made except as Fannie Mae may specifically authorize in writing.  Any unused sum remaining in any one category of expense may not be rolled over to a subsequent month, unless such rollover is because payment of an expense category was not yet due or made in such prior month.

Signed by Judge Laura Stuart Taylor July 23, 2015

4.5    Debtor may not use any Cash Collateral for any purpose or expense not set forth in the Budget without the prior written consent of Fannie Mae or an order of the Bankruptcy Court.

4.6    The Debtor shall continue to timely pay on a current basis monthly debt service payments (commencing with the payment due on or about July 1, 2015) in the same amount as when the Loan was in effect in the monthly amount of $28,365.63, exclusive of late fees or default interest which Fannie Mae contends is also due (this paragraph does not, in any way, reinstate what Fannie Mae contends is the fully accelerated and matured Loan, nor does it waive the Debtor's alleged right to seek to cure any defaults and to reinstate the Loan) to Fannie Mae set forth in Exhibit 1, and for any such payments, the Debtor agrees that turnover of such Cash Collateral pursuant to this Stipulation is voluntarily made.  The Debtor agrees that any turnover to Fannie Mae of any Cash Collateral and any application of the same by Fannie Mae to the Loan indebtedness shall not be deemed, in any manner, to constitute a setoff or other "action" as that term is used or defined in section 726 of the California Code of Civil Procedure, constitute a violation of the "one action rule" or be considered an effort by Fannie Mae to collect a deficiency judgment.

4.7    **Notice of Emergency Expenditures.**  In the event that an emergency develops requiring an immediate capital expenditure or an expenditure exceeding the Budget amount stated in subparagraph 4.3 above, Debtor shall give written notice by letter, facsimile or email transmission to Fannie Mae as follows:

David Hershorin
**Hershorin & Henry, LLP**
27422 Portola Parkway, Suite 360
Foothill Ranch, CA 92610
Telephone:  (949) 859-5600
Facsimile: (949) 859-5680
Email: davidh@hhlawgroup.com
**Counsel for Fannie Mae**

**STIPULATION FOR USE OF CASH COLLATERAL**

Signed by Judge Laura Stuart Taylor July 23, 2015

The notice shall contain a detailed description of such an emergency expense. If no response to the notice is received by counsel for Debtor within 48 hours after written notice is received by Fannie Mae's counsel (plus an additional 24 hours if the notice is given between 4 p.m. on a Friday and 7 a.m. on a Monday), the request shall be deemed approved. If the request is denied, Debtor may seek authority from the Court to make such expenditure from the Cash Collateral Account, on an expedited basis. If the Debtor represents to the Court that seeking Fannie Mae's advance approval of an emergency expense in accordance with the foregoing procedure before seeking Court authorization would lead to significant damage to the Property, the Debtor may seek Court authorization without first seeking Fannie Mae's approval pursuant to the foregoing procedure. If an emergency requires an immediate expenditure of cash collateral in excess of the Budget amount stated in subparagraph 4.3 above to avoid significant damage to the Property after written notice to Fannie Mae (as set forth in paragraph 17 below) but before either Fannie Mae's approval or the Court's authorization can be obtained, the Debtor may make the expenditure but shall seek Fannie Mae's approval and (absent Fannie Mae's approval) the Court's authorization as soon as practicable.

      4.8    Except as provided in the Budget, Debtor shall not make any payments of any kind whatsoever from the Cash Collateral Account to any person or entity holding a lien on the Collateral junior to the interest of Fannie Mae, or to members, managers, or partners, insiders, principals, or affiliates of Debtor without the prior written consent of Fannie Mae, an order of the Bankruptcy Court, or approval of an Insider Compensation Application.

      4.9    Debtor shall provide to Fannie Mae copies of all filings heretofore or hereafter filed by Debtor with the Bankruptcy Court, and/or with the Office of the United States Trustee, within three (3) business days of such filing, if counsel to Fannie Mae does not otherwise receive them through the CM/ECF system.

**STIPULATION FOR USE OF CASH COLLATERAL**

Signed by Judge Laura Stuart Taylor July 23, 2015

4.10     Debtor shall not sell or dispose of any of its property outside of the ordinary course of business without the advance consent of Fannie Mae and an entered order from the Bankruptcy Court.

4.11     The automatic stay presently in effect in this case pursuant to section 362 of the Bankruptcy Code is hereby modified by the terms and conditions hereof, to effectuate the terms hereof and permit the adequate protection provisions in favor of Fannie Mae and the extent necessary to enable Fannie Mae to record the order as entered by the Bankruptcy Court approving this Stipulation, as Fannie Mae deems appropriate.

4.12     The Debtor shall prepare and maintain and upon reasonable notice provide to Fannie Mae for examination the following records:

A.     All records required to be kept or maintained by the Debtor, including those required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the rules of this Court and the United States Trustee.

B.     All records required to be kept or maintained by the terms and conditions of this Stipulation, and any other agreement executed by the Debtor in favor of Fannie Mae.

C.     In addition, the Debtor shall provide to Fannie Mae the following reports in a timely manner.

1.     On or before execution of this Stipulation, the Debtor shall provide Fannie Mae with copies of all documents filed by the Debtor with the Office of the U.S. Trustee, and thereafter concurrently with such filing, provide Fannie Mae with copies of all documents filed by the Debtor with the Office of the U.S. Trustee.

2.     On or before the last business day of each month during the term of this Stipulation, beginning with the first such report due by the Debtor, the Debtor shall provide Fannie Mae with copies of the monthly operating reports.

**STIPULATION FOR USE OF CASH COLLATERAL**

Signed by Judge Laura Stuart Taylor July 23, 2015

3.     The Debtor shall also provide Fannie Mae in a timely and prompt fashion all reports or other information required by the Note, the Deed of Trust, and any other agreement executed by the Debtor in favor of Fannie Mae or any other agreement which may in the future be executed by the Debtor in favor of Fannie Mae.

D.     Inspection Rights. Fannie Mae is authorized, in its discretion, to reasonably audit the Debtor's books and records, and to inspect and/or appraise the Property.  Fannie Mae or its designated representative or agent shall be entitled on reasonable notice to inspect the books and records of the Debtor at any time during normal business hours. Fannie Mae shall be entitled to have its appraiser visit the Property upon reasonable notice to inspect and appraise the Property.

E.     In addition to the foregoing inspection rights, Fannie Mae shall have and be entitled to all inspections or other information required by the Note, the Deed of Trust, and any other agreements executed by the Debtor in favor of Fannie Mae or any other agreement which may in the future be executed by the Debtor in favor of Fannie Mae.

F.     Insurance.  The Debtor shall maintain insurance at all times for the Property and shall provide evidence of the same to Fannie Mae.

4.13    **Default.**    If Debtor fails to fully and timely perform any provision, term or condition of this Stipulation, Debtor shall be in default under this Stipulation.  In the event of a default, Fannie Mae shall give written notice to Debtor of the default, the actions required to cure such default, and its withdrawal of consent to the use of its Cash Collateral. Unless cured, Debtor's right to use Cash Collateral shall immediately cease on the later of ten (10) days from the mailing of such written notice thereof and Debtor shall immediately sequester and account for all Cash Collateral produced by and/or derived from the Property and/or Replacement Liens. Notice of any default shall be provided to Debtor under this paragraph to Debtor's

- 10-

Signed by Judge Laura Stuart Taylor July 23, 2015

counsel by fax, regular mail, overnight delivery or hand delivery at the following address:

> K. Todd Curry
> Curry Advisors, a Professional Law Corporation
> 525 B Street, Ste. 1500
> San Diego, CA 92101
> Phone: 619.238.0004
> Fax: 619.238.0006
> Email: tcurry@currylegal.com

4.14    **Additional Events of Default**.    Additionally, the occurrence of any of the following shall also be an event of default hereunder:

(a)    Entry of an order converting the Debtor's Chapter 11 case to Chapter 7 of the Bankruptcy Code, which order is not stayed within fourteen (14) days of the entry thereof;

(b)    Entry of an order dismissing the Chapter 11 case, which order is not stayed within fourteen (14) days of the entry thereof;

(c)    Entry of an order by the Bankruptcy Court appointing a Chapter 11 trustee or examiner in the Debtor's bankruptcy case, which order is not stayed within fourteen (14) days of the entry thereof;

(d)    Entry of an order granting Fannie Mae relief from the automatic stay;

(e)    The filing of any motion by the Debtor to obtain senior or *pari passu* DIP financing without the consent of Fannie Mae;

(f)    Failure of the Debtor to comply with any material terms, conditions, or covenants contained in this Order; and

(g) The reversal, vacatur, stay, amendment, supplementation or other modification of the order approving this Stipulation (without Fannie Mae's consent) in a manner which shall, materially and adversely affect the rights of Fannie Mae hereunder, or shall materially and adversely affect the priority of any or all of Fannie Mae's Collateral or security interests or adequate protection.

- 11 -

**STIPULATION FOR USE OF CASH COLLATERAL**

5.      **Replacement Liens**. In addition to the rights granted to Fannie Mae under the Loan Documents and section 552(b), for any Cash Collateral used by Debtor, Fannie Mae shall be granted replacement liens ("**Replacement Liens**") on and security interests in all of Debtor's post-petition Collateral, to the same extent, validity and priority as Fannie Mae's pre-petition liens. In the event of default by Debtor, and relief from the automatic stay, Fannie Mae may, subject to the rights of senior creditors in the Collateral, foreclose such replacement liens under the pre-petition Loan Documents. The replacement liens granted herein shall not create any lien upon any claims for relief that Debtor might have under 11 U.S.C. §§ 506(c), 544, 545, 547, 548, and 549. The replacement liens and security interests granted herein are valid, enforceable, and fully perfected, and no filing or recordation or any other act in accordance with any applicable local, state, or federal law is necessary to create or perfect such lien and security interest. Debtor shall execute and deliver to Fannie Mae such documents as Fannie Mae may reasonably request to evidence the replacement liens granted herein. To the extent that Fannie Mae's lien on all post-petition Cash Collateral is insufficient to compensate Fannie Mae for the pre-petition cash collateral, Fannie Mae shall also be allowed an administrative priority claim in accordance with the provisions of 11 U.S.C. §§ 507(b) for any deficiency.

6.      **Stipulation Binding**. The terms and conditions of this Stipulation shall be binding on the parties hereto and their assigns immediately upon the final approval hereof by the Bankruptcy Court.  All provisions of this Agreement are binding upon this estate, all of Debtor's successors, any successor estate, all creditors, and any and all other actual or potential successors in interest to Debtor, including without limitation, any trustee appointed in this Chapter 11 case, any trustee in a Chapter 7 case if the case is converted, any committees formed in either this Chapter 11 case or following any conversion of this case, and/or any successor estates which are, or which may hereafter be, appointed, created, or approved.

**STIPULATION FOR USE OF CASH COLLATERAL**

7.    **No Impact on Right to Seek Other or Different Relief**. Nothing contained in this Stipulation and the order thereon shall be deemed or be construed to waive, reduce, or otherwise diminish the rights of Fannie Mae to seek additional or different adequate protection of its interests under the Loan Documents, to seek relief from the automatic stay, or to take any other action in this bankruptcy case, including but not limited to, seeking relief from the automatic stay. Furthermore, nothing contained in this Stipulation shall be deemed or be construed to be an admission that Fannie Mae is adequately protected.

8.    **Conditions Precedent.**   It shall be a condition precedent to the effectiveness of this Agreement that each and all of the following occur:

8.1    All parties for whom a signature space is provided below shall execute and deliver to Fannie Mae this Agreement, and each other document required to be executed and delivered hereunder; and

8.2    The United States Bankruptcy Court shall enter an order approving the terms and effectiveness of this Agreement.

9.    **Neutral Construction of the Stipulation**. This Stipulation is a product of negotiation among the parties hereto and represents the jointly conceived, bargained-for, and agreed-upon language mutually determined by the parties to express their intentions in entering into this Stipulation. Any ambiguity or uncertainty in this Stipulation shall be deemed to be caused by or attributable to the parties hereto collectively. In any action to enforce or interpret this Stipulation, the Stipulation shall be construed in a neutral manner, and no term or provision of this Stipulation, or the Stipulation as a whole, shall be construed more or less favorably to any one party to this Stipulation.

10.    **Representations and Warranties**. The parties hereto further represent and warrant to each other as follows:

- 13-

**STIPULATION FOR USE OF CASH COLLATERAL**

10.1    Each party hereto has received independent legal advice from attorneys of that party's choice with respect to the advisability of entering into this Stipulation, and prior to the execution of this Stipulation, that party's attorney reviewed this Stipulation and discussed the agreement with the party, and the party has made all desired changes.

10.2    Except as expressly stated in this Stipulation, no party hereto has made any statement or representation to any other party hereto regarding the facts relied upon by said party in entering into this Stipulation, and each party hereto specifically does not rely upon any statement, representation, or promise of any other party hereto in executing this Stipulation, except as expressly stated in this Stipulation.

11.    **Headings**. The headings set forth herein are inserted for convenience of the parties only, and shall not be used to interpret or construe or in any way affect the meaning of the terms and provisions of this Stipulation.

12.    **Integration**. Except as expressly provided in this Stipulation, this Stipulation is the final written expression and complete and exclusive statement of all the agreements, conditions, promises and covenants among the parties with respect to the subject matter hereof and supersedes all prior or contemporaneous agreements, negotiations, representations, understandings and discussions among the parties and/or their respective counsel with respect to the subject matter conveyed hereby. Any amendment or modification of this Stipulation, in order to be legally binding, must be in writing specifically referring to the Stipulation and signed by duly authorized representatives of all parties hereto.

13.    **Counterpart Signatures.** This Stipulation may be signed in counterparts and signatures may be exchanged electrically or by facsimile.

14.    **Bankruptcy Court Order**. This Stipulation shall be submitted forthwith to the Bankruptcy Court for approval and, in that regard, Debtor and/or Fannie Mae

- 14-

STIPULATION FOR USE OF CASH COLLATERAL

may give such notice and opportunity to be heard as is required under Bankruptcy Rule 4001, Local Bankruptcy Rule 4001-1 or other applicable law.

15.   **Reservation of Rights.** Except as provided in this Agreement, Fannie Mae specifically reserves all of its rights, interests and remedies at law and in equity, or otherwise, with respect to, in connection with or relating to the Loan Documents, this Agreement and any other agreements, instruments, facts or matters relating to any of the foregoing. This reservation of rights is not intended and shall not be construed as exclusive.

16.   No Violation of Local Rules.  The parties represent that to the best of their knowledge, this Stipulation contains no provision that violates the guidelines set forth in Appendix D2 or Appendix D3 of the Local Bankruptcy Rules.

17.   **Notices.**  Any notice required to be given hereunder shall be given as follows:

*If to Fannie Mae:*

> David Hershorin
> **Hershorin & Henry, LLP**
> 27422 Portola Parkway, Suite 360
> Foothill Ranch, CA 92610
> Telephone:  (949) 859-5600
> Facsimile: (949) 859-5680
> Email: davidh@hhlawgroup.com

*If to Debtor:*

> K. Todd Curry
> Curry Advisors, a Professional Law Corporation
> 525 B Street, Ste. 1500
> San Diego, CA 92101
> Telephone: 619.238.0004
> Facsimile: 619.238.0006
> Email: tcurry@currylegal.com

- 15 -

**STIPULATION FOR USE OF CASH COLLATERAL**

NOW THEREFORE, the parties, by and through their counsel, stipulate to the

foregoing use of Cash Collateral from the Petition Date through September 29, 2015.

HERSHORIN & HENRY LLP

By: _____

DAVID M. HERSHORIN
Attorneys for Fannie Mae

CURRY ADVISORS, A PROFESSIONAL LAW CORPORATION

By: K. Todd Curry

K. TODD CURRY
Attorneys for Debtor TIERRA DEL REY, LLC

- 16-

STIPULATION FOR USE OF CASH COLLATERAL

**EXHIBIT 1—BUDGET**

<u>**RECURRING  MONTHLY COSTS**</u>

FNMA Mtg. Note                           $28, 326.51  (estimate—amount paid will be per loan documents)

Personnel Costs:                          $  5,208.00  ($2,403.85 bi-weekly payroll)
(Property Manager,
Maintenance Worker)

**Utilities:**

EDCO Waste Management          $1,380.95
Helix Water District                      $3,405.81
San Diego Gas & Electric           $2,975.00

**Necessary Vendors:**

Landscaping/Groundskeeper    $1,000.00
HD Supply                                     $  200.00
(Office Supplies and Unit Small
Equipment Repair & Replacement parts)

Cox Cable                                     $ 335.50
(Internet, Clubhouse Cable &
Office Telephones)

Azul Pool & Spa                          $ 300.00
Pest Control                                 $   65.00

SSD Systems Security                 $   94.50

Unit Turnover Costs:                    <u>$1,500.00</u>

**TOTAL:**                                       **$44,791.27**

**Extraordinary, One-Time Expenses:**

<u>Unusual</u> Rent Ready Expenses:        Up to $5,000.00 to re-let the units the receiver caused to be vacated.

Property insurance:                        $9,031.00 (only if not paid by loan servicer through impounds)