# Exhibit A

## to Declaration of Paul Taccone

In re Tierra del Rey LLC
Case No. 15-04253-LT11



# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| 0,000.00 | 03-25-2009 | 03-25-2011 | 1793 | 1A / 110 | | KTC | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

**Borrower:** BAY VISTA METHODIST HEIGHTS, A CALIFORNIA
NONPROFIT PUBLIC BENEFIT CORPORTION
1940 54TH STREET
SAN DIEGO, CA 92105

**Lender:** Security Business Bank of San Diego
Main Office
701 B Street  Suite 100
San Diego, CA 92101

---

**Principal Amount: $1,200,000.00**          **Initial Rate: 6.000%**          **Date of Note: March 25, 2009**

**PROMISE TO PAY.** BAY VISTA METHODIST HEIGHTS, A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORTION ("Borrower") promises to pay to Security Business Bank of San Diego ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Two Hundred Thousand & 00/100 Dollars ($1,200,000.00), together with interest on the unpaid principal balance from March 25, 2009, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in one principal payment of $1,200,000.00 plus interest on March 25, 2011. This payment due on March 25, 2011, will be for all principal and all accrued interest not yet paid. In addition, Borrower will pay regular monthly payments of all accrued unpaid interest due as of each payment date, beginning April 25, 2009, with all subsequent interest payments to be due on the same day of each month after that. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any unpaid collection costs; and then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an independent index which is the Prime Rate as published in the Money Rates Section of the Wall Street Journal, defined as the base rate on corporate loans posted by at least 75% of the nations 30 largest banks. When a range of rates has been published the higher of the rates will be used (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. The interest rate change will not occur more often than each day. Borrower understands that Lender may make loans based on other rates as well. The Index currently is 3.250% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be calculated as described in the "INTEREST CALCULATION METHOD" paragraph using a rate of 1.250 percentage points over the Index, adjusted if necessary for any minimum and maximum rate limitations described below, resulting in an initial rate of 6.000%. NOTICE: Under no circumstances will the interest rate on this Note be less than 6.000% per annum or more than the maximum rate allowed by applicable law.

**~~IN~~TEREST CALCULATION METHOD.** Interest on this Note is computed on a 365/365 simple interest basis; that is, by applying the ratio of the ~~inte~~rest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the ~~prin~~cipal balance is outstanding. All interest payable under this Note is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Note, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Note, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: Security Business Bank of San Diego, 701 B Street, Suite 100 San Diego, CA 92101.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, the interest rate on this Note shall, if permitted under applicable law, immediately increase by adding a 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default.

**DEFAULT.** Each of the following shall constitute an event of default ("Event of Default") under this Note:

**Payment Default.** Borrower fails to make any payment when due under this Note.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Note or in any of the related documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or Borrower's ability to repay this Note or perform Borrower's obligations under this Note or any of the related documents.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any loan.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Note or the related documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall

**PROMISSORY NOTE**
**(Continued)**

Loan No: 1793

Page 2

not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any guaranty of the indebtedness evidenced by this Note.

**Change In Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of this Note is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Note within the preceding twelve (12) months, it may be cured if Borrower, after receiving written notice from Lender demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Note and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Note will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Note has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of San Diego County, State of California.

**COLLATERAL.** Borrower acknowledges this Note is secured by the following collateral described in the security instrument listed herein: a Deed of Trust dated March 25, 2009, to a trustee in favor of Lender on real property located in SAN DIEGO County, State of California. That agreement contains the following due on sale provision: Lender may, at Lender's option, declare immediately due and payable all sums secured by the Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for d, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Borrower is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Borrower. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**FINANCIAL INFORMATION PROVISION.** On an annual basis, Borrower agrees to provide Lender with financial information (which may include rent roll and operating statements) during the term of this loan and any renewals or extensions thereof.

**Successor Interests.** The terms of this Note shall be binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns, and shall inure to the benefit of Lender and its successors and assigns.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: Security Business Bank of San Diego 701 B Street, Suite 100 San Diego, CA 92101.

**General Provisions.** This Note is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Note on its demand. If any part of this Note cannot be enforced, this fact will not affect the rest of the Note. Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several.

 

**PROMISSORY NOTE**
(Continued)

Loan No: 1793                                                                                          Page 3

...OR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE.

BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS PROMISSORY NOTE.

BORROWER:

BAY VISTA METHODIST HEIGHTS, A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORTION

By: _____                    By: _____
KENNETH  B.  HARRISON,  Chairman  of  the        HARVEY  EVANS,  Treasurer  of  BAY  VISTA
Board/CEO of BAY VISTA METHODIST HEIGHTS, A      METHODIST HEIGHTS, A CALIFORNIA NONPROFIT
CALIFORNIA   NONPROFIT   PUBLIC   BENEFIT        PUBLIC BENEFIT CORPORTION
CORPORTION

LASER PRO Lending, Ver. 5.43.00.003  Copr. Harland Financial Solutions, Inc. 1997, 2009   All Rights Reserved.   - CA  V:\CFI\SB\CFI\LPL\D20.FC  TR-1805  PR-2

*Floor Interest Rate:*

*Floor Interest Rate to be Lowered by Half percent for each $100,000.00 paydown until Floor reaches 5%.*

## Allonge

Reference is made to the $1,200,000.00 promissory note dated March 25, 2009 from Bay Vista Methodist Heights, a California Nonprofit Public Benefit Corporation (the "Note") payable to the order of AmericanWest Bank ("Assignor")[,as successor in interest to Security Business Bank of San Diego]. It is intended that this Allonge be attached to and made a permanent part of the Note.

Pay to the order of National Loan Acquisitions Company ("Assignee"), without recourse, representations or warranties of any kind.

Executed this _12_ day of __Jun__ , _2014_ .

AmericanWest Bank, as successor in interest to Security Business Bank of San Diego

By: John Mackeay
Its: Uice President

# Exhibit B

## to Declaration of Paul Taccone

In re Tierra del Rey LLC
Case No. 15-04253-LT11



Recorded Request Of
FIDELITY NATIONAL TITLE

**RECORDATION REQUESTED BY:**
AmericanWest Bank
Main Office
701 B Street Suite 100
San Diego, CA 92101

**WHEN RECORDED MAIL TO:**
AmericanWest Bank
Main Office
701 B Street Suite 100
San Diego, CA 92101

**SEND TAX NOTICES TO:**
TIERRA DEL REY, L.L.C.
3944 MURPHY CANYON ROAD, SUITE C200
SAN DIEGO, CA 92123

5247

DOC # 2012-0427715

JUL 24, 2012    8:00 AM
OFFICIAL RECORDS
SAN DIEGO COUNTY RECORDER'S OFFICE
Ernest J. Dronenburg, Jr., COUNTY RECORDER
FEES:        54.00
DA:        1
**PAGES:    13**

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS DEED OF TRUST is dated July 18, 2012, among TIERRA DEL REY, L.L.C., a California limited liability company, whose address is 3944 MURPHY CANYON ROAD, SUITE C200, SAN DIEGO, CA 92123 ("Trustor"); AmericanWest Bank, whose address is Main Office, 701 B Street Suite 100, San Diego, CA 92101 (referred to below sometimes as "Lender" and sometimes as "Beneficiary"); and UPF Washington Incorporated, whose address is 12410 E. Mirabeau, Ste 100, Spokane Valley, WA 99215 (referred to below as "Trustee").

CONVEYANCE AND GRANT. For valuable consideration, Trustor irrevocably grants, transfers and assigns to Trustee in trust, with power of sale, for the benefit of Lender as Beneficiary, all of Trustor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, **(the "Real Property") located in SAN DIEGO County, State of California:**

See EXHIBIT "A", which is attached to this Deed of Trust and made a part of this Deed of Trust as if fully set forth herein.

The Real Property or its address is commonly known as 3675 KING STREET, LA MESA, CA 91941. The Assessor's Parcel Number for the Real Property is 474-552-10-00.

Trustor presently assigns to Lender (also known as Beneficiary in this Deed of Trust) all of Trustor's right, title, and interest in and to all present and future leases of the Property and all Rents from the Property. This is an absolute assignment of Rents made in connection with an obligation secured by real property pursuant to California Civil Code Section 2938. In addition, Trustor grants to Lender a Uniform Commercial Code security interest in the Personal Property and Rents.

THIS DEED OF TRUST, INCLUDING THE ASSIGNMENT OF RENTS AND THE SECURITY INTEREST IN THE RENTS AND PERSONAL PROPERTY, IS GIVEN TO SECURE (A) PAYMENT OF THE INDEBTEDNESS AND (B) PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE, THE RELATED DOCUMENTS, AND THIS DEED OF TRUST. THIS DEED OF TRUST IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:

TRUSTOR'S REPRESENTATIONS AND WARRANTIES. Trustor warrants that: (a) this Deed of Trust is executed at Borrower's request and not at the request of Lender; (b) Trustor has the full power, right, and authority to enter into this Deed of Trust and to hypothecate the Property; (c) the provisions of this Deed of Trust do not conflict with, or result in a default under any agreement or other instrument binding upon Trustor and do not result in a violation of any law, regulation, court decree or order applicable to Trustor; (d) Trustor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (e) Lender has made no representation to Trustor about Borrower (including without limitation the creditworthiness of Borrower).

TRUSTOR'S WAIVERS. Except as prohibited by applicable law, Trustor waives any right to require Lender to (a) make any presentment, protest, demand, or notice of any kind, including notice of change of any terms of repayment of the Indebtedness, default by Borrower or any other guarantor or surety, any action or nonaction taken by Borrower, Lender, or any other guarantor or surety of Borrower, or the creation of new or additional Indebtedness; (b) proceed against any person, including Borrower, before proceeding against Trustor; (c) proceed against any collateral for the Indebtedness, including Borrower's collateral, before proceeding against Trustor; (d) apply any payments or proceeds received against the Indebtedness in any order; (e) give notice of the terms, time, and place of any sale of any collateral pursuant to the Uniform Commercial Code or any other law governing such sale; (f) disclose any information about the Indebtedness, Borrower, any collateral, or any other guarantor or surety, or about any action or nonaction of Lender; or (g) pursue any remedy or course of action in Lender's power whatsoever.

Trustor also waives any and all rights or defenses arising by reason of (h) any disability or other defense of Borrower, any other guarantor or surety or any other person; (i) the cessation from any cause whatsoever, other than payment in full, of the Indebtedness; (j) the application of proceeds of the Indebtedness by Borrower for purposes other than the purposes understood and intended by Trustor and Lender; (k) any act of omission or commission by Lender which directly or indirectly results in or contributes to the discharge of Borrower or any other guarantor or surety, or the Indebtedness, or the loss or release of any collateral by operation of law or otherwise; (l) any

620 049-6

5248

# DEED OF TRUST
(Continued)

Loan No: 1793    Page 2

statute of limitations in any action under this Deed of Trust or on the indebtedness; or (m) any modification or change in terms of the indebtedness, whatsoever, including without limitation, the renewal, extension, acceleration, or other change in the time payment of the indebtedness is due and any change in the interest rate.

Trustor waives all rights and defenses arising out of an election of remedies by Lender, even though that election of remedies, such as non-judicial foreclosure with respect to security for a guaranteed obligation, has destroyed Trustor's rights of subrogation and reimbursement against Borrower by the operation of Section 580d of the California Code of Civil Procedure, or otherwise.

Trustor waives all rights and defenses that Trustor may have because Borrower's obligation is secured by real property. This means among other things: (1) Lender may collect from Trustor without first foreclosing on any real or personal property collateral pledged by Borrower. (2) If Lender forecloses on any real property collateral pledged by Borrower: (A) The amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. (B) Lender may collect from Trustor even if Lender, by foreclosing on the real property collateral, has destroyed any right Trustor may have to collect from Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Trustor may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure.

Trustor understands and agrees that the foregoing waivers are unconditional and irrevocable waivers of substantive rights and defenses to which Trustor might otherwise be entitled under state and federal law. The rights and defenses waived include, without limitation, those provided by California laws of suretyship and guaranty, anti-deficiency laws, and the Uniform Commercial Code. Trustor acknowledges that Trustor has provided these waivers of rights and defenses with the intention that they be fully relied upon by Lender. Trustor further understands and agrees that this Deed of Trust is a separate and independent contract between Trustor and Lender, given for full and ample consideration, and is enforceable on its own terms. Until all indebtedness is paid in full, Trustor waives any right to enforce any remedy Trustor may have against Borrower's or any other guarantor, surety, or other person, and further, Trustor waives any right to participate in any collateral for the indebtedness now or hereafter held by Lender.

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Deed of Trust, Borrower shall pay to Lender all indebtedness secured by this Deed of Trust as it becomes due, and Borrower and Trustor shall perform all their respective obligations under the Note, this Deed of Trust, and the Related Documents.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Borrower and Trustor agree that Borrower's and Trustor's possession and use of the Property shall be governed by the following provisions:

>   **Possession and Use.** Until the occurrence of an Event of Default, Trustor may (1) remain in possession and control of the Property; (2) use, operate or manage the Property; and (3) collect the Rents from the Property.

>   **Duty to Maintain.** Trustor shall maintain the Property in tenantable condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

>   **Compliance With Environmental Laws.** Trustor represents and warrants to Lender that: (1) During the period of Trustor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2) Trustor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a) any breach or violation of any Environmental Laws, (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters; and (3) Except as previously disclosed to and acknowledged by Lender in writing, (a) neither Trustor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and (b) any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws. Trustor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Trustor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Deed of Trust. Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Trustor or to any other person. The representations and warranties contained herein are based on Trustor's due diligence in investigating the Property for Hazardous Substances. Trustor hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Trustor becomes liable for cleanup or other costs under any such laws; and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Deed of Trust or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Trustor's ownership or interest in the Property, whether or not the same was or should have been known to Trustor. The provisions of this section of the Deed of Trust, including the obligation to indemnify and defend, shall survive the payment of the indebtedness and the satisfaction and reconveyance of the lien of this Deed of Trust and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

>   **Nuisance, Waste.** Trustor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property. Without limiting the generality of the foregoing, Trustor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

>   **Removal of Improvements.** Trustor shall not demolish or remove any improvements from the Real Property without Lender's prior written consent. As a condition to the removal of any improvements, Lender may require Trustor to make arrangements satisfactory to Lender to replace such improvements with improvements of at least equal value.

>   **Lender's Right to Enter.** Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Trustor's compliance with the terms and conditions of this Deed of Trust.

>   **Compliance with Governmental Requirements.** Trustor shall promptly comply with all laws, ordinances, and regulations, now or

5249

**DEED OF TRUST**
**(Continued)**

Loan No: 1793

Page 3

hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property, including without limitation, the Americans With Disabilities Act. Trustor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Trustor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized. Lender may require Trustor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.** Trustor agrees neither to abandon or leave unattended the Property. Trustor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.** Lender may, at Lender's option, declare immediately due and payable all sums secured by this Deed of Trust upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property. A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property. If any Trustor is a corporation, partnership or limited liability company, transfer also includes any change in ownership of more than twenty-five percent (25%) of the voting stock, partnership interests or limited liability company interests, as the case may be, of such Trustor. However, this option shall not be exercised by Lender if such exercise is prohibited by applicable law.

**TAXES AND LIENS.** The following provisions relating to the taxes and liens on the Property are part of this Deed of Trust:

**Payment.** Trustor shall pay when due (and in all events at least ten (10) days prior to delinquency) all taxes, special taxes, assessments, charges (including water and sewer), fines and impositions levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property. Trustor shall maintain the Property free of all liens having priority over or equal to the interest of Lender under this Deed of Trust, except for the lien of taxes and assessments not due, except for the Existing Indebtedness referred to below, and except as otherwise provided in this Deed of Trust.

**Right to Contest.** Trustor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized. If a lien arises or is filed as a result of nonpayment, Trustor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Trustor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and attorneys' fees, or other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Trustor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Trustor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Trustor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Trustor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials and the cost exceeds $1,000.00. Trustor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Trustor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Deed of Trust.

**Maintenance of Insurance.** Trustor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Trustor shall also procure and maintain comprehensive general liability insurance in such coverage amounts as Lender may request with Trustee and Lender being named as additional insureds in such liability insurance policies. Additionally, Trustor shall maintain such other insurance, including but not limited to hazard, business interruption, and boiler insurance, as Lender may reasonably require. Notwithstanding the foregoing, in no event shall Trustor be required to provide hazard insurance in excess of the replacement value of the Improvements on the Real Property. Policies shall be written in form, amounts, coverages and basis reasonably acceptable to Lender and issued by a company or companies reasonably acceptable to Lender. Trustor, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least ten (10) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Trustor or any other person. Should the Real Property be located in an area designated by the Director of the Federal Emergency Management Agency as a special flood hazard area, Trustor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Trustor shall promptly notify Lender of any loss or damage to the Property if the estimated cost of repair or replacement exceeds $1,000.00. Lender may make proof of loss if Trustor fails to do so within fifteen (15) days of the casualty. If in Lender's sole judgment Lender's security interest in the Property has been impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If the proceeds are to be applied to restoration and repair, Trustor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Trustor from the proceeds for the reasonable cost of repair or restoration if Trustor is not in default under this Deed of Trust. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Deed of Trust,

5250

## DEED OF TRUST
## (Continued)

Loan No: 1793                                                                   Page 4

then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the indebtedness. If Lender holds any proceeds after payment in full of the indebtedness, such proceeds shall be paid to Trustor as Trustor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing indebtedness shall constitute compliance with the insurance provisions under this Deed of Trust, to the extent compliance with the terms of this Deed of Trust would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Deed of Trust for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing indebtedness.

**Trustor's Report on Insurance.** Upon request of Lender, however not more than once a year, Trustor shall furnish to Lender a report on each existing policy of insurance showing: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the property insured, the then current replacement value of such property, and the manner of determining that value; and (5) the expiration date of the policy. Trustor shall, upon request of Lender, have an independent appraiser satisfactory to Lender determine the cash value replacement cost of the Property.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Property or if Trustor fails to comply with any provision of this Deed of Trust or any Related Documents, including but not limited to Trustor's failure to comply with any obligation to maintain Existing Indebtedness in good standing as required below, or to discharge or pay when due any amounts Trustor is required to discharge or pay under this Deed of Trust or any Related Documents, Lender on Trustor's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on the Property and paying all costs for insuring, maintaining and preserving the Property. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Trustor. All such expenses will become a part of the indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Deed of Trust also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon Default.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Deed of Trust:

**Title.** Trustor warrants that: (a) Trustor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Deed of Trust, and (b) Trustor has the full right, power, and authority to execute and deliver this Deed of Trust to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Trustor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Trustor's title or the interest of Trustee or Lender under this Deed of Trust, Trustor shall defend the action at Trustor's expense. Trustor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Trustor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Trustor warrants that the Property and Trustor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Representations and Warranties.** All representations, warranties, and agreements made by Trustor in this Deed of Trust shall survive the execution and delivery of this Deed of Trust, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's indebtedness shall be paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Deed of Trust:

**Existing Lien.** The lien of this Deed of Trust securing the indebtedness may be secondary and inferior to the lien securing payment of an existing obligation with an account number of 500627 to Centerline Mortgage Capital, Inc. The existing obligation has a current principal balance of approximately $4,484,278.00 and is in the original principal amount of $4,640,000.00. The obligation has the following payment terms: $23,682.79 per Month. Trustor expressly covenants and agrees to pay, or see to the payment of, the Existing indebtedness and to prevent any default on such Indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Trustor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Deed of Trust by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Trustor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to eminent domain and inverse condemnation proceedings are a part of this Deed of Trust:

**Proceedings.** If any eminent domain or inverse condemnation proceeding is commenced affecting the Property, Trustor shall promptly notify Lender in writing, and Trustor shall promptly take such steps as may be necessary to pursue or defend the action and obtain the award. Trustor may be the nominal party in any such proceeding, but Lender shall be entitled, at its election, to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Trustor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If any award is made or settlement entered into in any condemnation proceedings affecting all or any part of the Property or by any proceeding or purchase in lieu of condemnation, Lender may at its election, and to the extent permitted by law, require that all or any portion of the award or settlement be applied to the indebtedness and to the repayment of all reasonable costs, expenses, and attorneys' fees incurred by Trustee or Lender in connection with the condemnation proceedings.

5251

## DEED OF TRUST
**Loan No: 1793**                                    **(Continued)**                                    **Page 5**

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Deed of Trust:

**Current Taxes, Fees and Charges.** Upon request by Lender, Trustor shall execute such documents in addition to this Deed of Trust and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Trustor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Deed of Trust, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Deed of Trust.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Deed of Trust or upon all or any part of the indebtedness secured by this Deed of Trust; (2) a specific tax on Borrower which Borrower is authorized or required to deduct from payments on the indebtedness secured by this type of Deed of Trust; (3) a tax on this type of Deed of Trust chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the indebtedness or on payments of principal and interest made by Borrower.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Deed of Trust, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Trustor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Deed of Trust as a security agreement are a part of this Deed of Trust:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Trustor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Rents and Personal Property. Trustor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Trustor shall not remove, sever or detach the Personal Property from the Property. Upon default, Trustor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Trustor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Trustor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Deed of Trust may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Deed of Trust.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Deed of Trust:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Trustor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Borrower's and Trustor's obligations under the Note, this Deed of Trust, and the Related Documents, and (2) the liens and security interests created by this Deed of Trust on the Property, whether now owned or hereafter acquired by Trustor. Unless prohibited by law or Lender agrees to the contrary in writing, Trustor shall reimburse Lender for all costs and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Trustor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Trustor and at Trustor's expense. For such purposes, Trustor hereby irrevocably appoints Lender as Trustor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Borrower and Trustor pay all the indebtedness when due, and Trustor otherwise performs all the obligations imposed upon Trustor under this Deed of Trust, Lender shall execute and deliver to Trustee a request for full reconveyance and shall execute and deliver to Trustor suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Lender may charge Trustor a reasonable reconveyance fee at the time of reconveyance.

**EVENTS OF DEFAULT.** Each of the following, at Lender's option, shall constitute an Event of Default under this Deed of Trust:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower or Trustor fails to comply with or to perform any other term, obligation, covenant or condition contained in this Deed of Trust or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower or Trustor.

**Compliance Default.** Failure to comply with any other term, obligation, covenant or condition contained in this Deed of Trust, the Note or in any of the Related Documents.

**Default on Other Payments.** Failure of Trustor within the time required by this Deed of Trust to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with the Property.

**Default in Favor of Third Parties.** Should Borrower or any Grantor default under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's ability to repay the Indebtedness or Borrower's or Grantor's ability to perform their

5252

| | **DEED OF TRUST** | |
|---|---|---|
| Loan No: 1793 | (Continued) | Page 6 |

respective obligations under this Deed of Trust or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or Trustor or on Borrower's or Trustor's behalf under this Deed of Trust or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Defective Collateralization.** This Deed of Trust or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The dissolution or termination of Borrower's or Trustor's existence as a going business, the insolvency of Borrower or Trustor, the appointment of a receiver for any part of Borrower's or Trustor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Trustor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Trustor or by any governmental agency against any property securing the Indebtedness. This includes a garnishment of any of Borrower's or Trustor's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower or Trustor as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower or Trustor gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Breach of Other Agreement.** Any breach by Borrower or Trustor under the terms of any other agreement between Borrower or Trustor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Borrower or Trustor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's or Trustor's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Right to Cure.** If any default, other than a default in payment is curable and if Trustor has not been given a notice of a breach of the same provision of this Deed of Trust within the preceding twelve (12) months, it may be cured if Trustor, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Deed of Trust, at any time thereafter, Trustee or Lender may exercise any one or more of the following rights and remedies:

**Election of Remedies.** Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Trustor under this Deed of Trust, after Trustor's failure to perform, shall not affect Lender's right to declare a default and exercise its remedies.

**Foreclosure by Sale.** Upon an Event of Default under this Deed of Trust, Beneficiary may declare the entire Indebtedness secured by this Deed of Trust immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold the Property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed of Trust, the Note, other documents requested by Trustee, and all documents evidencing expenditures secured hereby. After the lapse of such time as may then be required by law following the recordation of the notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the Property at the time and place fixed by it in the notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement in accordance with applicable law. Trustee shall deliver to such purchaser its deed conveying the Property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary may purchase at such sale. After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

**Judicial Foreclosure.** With respect to all or any part of the Real Property, Lender shall have the right in lieu of foreclosure by power of sale to foreclose by judicial foreclosure in accordance with and to the full extent provided by California law.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code, including without limitation the right to recover any deficiency in the manner and to the full extent provided by California law.

**Collect Rents.** Lender shall have the right, without notice to Borrower or Trustor to take possession of and manage the Property and collect the Rents, including amounts past due and unpaid, and apply the net proceeds, over and above Lender's costs, against the

5253

## DEED OF TRUST
## (Continued)

Loan No: 1793                                                                                                      Page 7

Indebtedness. In furtherance of this right, Lender may require any tenant or other user of the Property to make payments of rent or use fees directly to Lender. If the Rents are collected by Lender, then Trustor irrevocably designates Lender as Trustor's attorney-in-fact to endorse instruments received in payment thereof in the name of Trustor and to negotiate the same and collect the proceeds. Payments by tenants or other users to Lender in response to Lender's demand shall satisfy the obligations for which the payments are made, whether or not any proper grounds for the demand existed. Lender may exercise its rights under this subparagraph either in person, by agent, or through a receiver.

Appoint Receiver. Lender shall have the right to have a receiver appointed to take possession of all or any part of the Property, with the power to protect and preserve the Property, to operate the Property preceding foreclosure or sale, and to collect the Rents from the Property and apply the proceeds, over and above the cost of the receivership, against the indebtedness. The receiver may serve without bond if permitted by law. Lender's right to the appointment of a receiver shall exist whether or not the apparent value of the Property exceeds the indebtedness by a substantial amount. Employment by Lender shall not disqualify a person from serving as a receiver.

Tenancy at Sufferance. If Trustor remains in possession of the Property after the Property is sold as provided above or Lender otherwise becomes entitled to possession of the Property upon default of Trustor, Trustor shall become a tenant at sufferance of Lender or the purchaser of the Property and shall, at Lender's option, either (1) pay a reasonable rental for the use of the Property, or (2) vacate the Property immediately upon the demand of Lender.

Other Remedies. Trustee or Lender shall have any other right or remedy provided in this Deed of Trust or the Note or available at law or in equity.

Notice of Sale. Lender shall give Trustor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

Sale of the Property. To the extent permitted by applicable law, Borrower and Trustor hereby waives any and all rights to have the Property marshalled. In exercising its rights and remedies, the Trustee or Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

Attorneys' Fees; Expenses. If Lender institutes any suit or action to enforce any of the terms of this Deed of Trust, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees, title insurance, and fees for the Trustee, to the extent permitted by applicable law. Trustor also will pay any court costs, in addition to all other sums provided by law.

Rights of Trustee. Trustee shall have all of the rights and duties of Lender as set forth in this section.

POWERS AND OBLIGATIONS OF TRUSTEE. The following provisions relating to the powers and obligations of Trustee are part of this Deed of Trust:

Powers of Trustee. In addition to all powers of Trustee arising as a matter of law, Trustee shall have the power to take the following actions with respect to the Property upon the written request of Lender and Trustor: (a) join in preparing and filing a map or plat of the Real Property, including the dedication of streets or other rights to the public; (b) join in granting any easement or creating any restriction on the Real Property; and (c) join in any subordination or other agreement affecting this Deed of Trust or the interest of Lender under this Deed of Trust.

Obligations to Notify. Trustee shall not be obligated to notify any other party of a pending sale under any other trust deed or lien, or of any action or proceeding in which Trustor, Lender, or Trustee shall be a party, unless the action or proceeding is brought by Trustee.

Trustee. Trustee shall meet all qualifications required for Trustee under applicable law. In addition to the rights and remedies set forth above, with respect to all or any part of the Property, the Trustee shall have the right to foreclose by notice and sale, and Lender shall have the right to foreclose by judicial foreclosure, in either case in accordance with and to the full extent provided by applicable law.

Successor Trustee. Lender, at Lender's option, may from time to time appoint a successor Trustee to any Trustee appointed under this Deed of Trust by an instrument executed and acknowledged by Lender and recorded in the office of the recorder of SAN DIEGO County, State of California. The instrument shall contain, in addition to all other matters required by state law, the names of the original Lender, Trustee, and Trustor, the book and page where this Deed of Trust is recorded, and the name and address of the successor trustee, and the instrument shall be executed and acknowledged by Lender or its successors in interest. The successor trustee, without conveyance of the Property, shall succeed to all the title, power, and duties conferred upon the Trustee in this Deed of Trust and by applicable law. This procedure for substitution of Trustee shall govern to the exclusion of all other provisions for substitution.

Acceptance by Trustee. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law.

NOTICES. Any notice required to be given under this Deed of Trust shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier,

5254

**DEED OF TRUST**
**(Continued)**

Loan No: 1793                                                                                                    Page 8

or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Deed of Trust. Trustor requests that copies of any notices of default and sale be directed to Trustor's address shown near the beginning of this Deed of Trust. All copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust shall be sent to Lender's address, as shown near the beginning of this Deed of Trust. Any party may change its address for notices under this Deed of Trust by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Trustor agrees to keep Lender informed at all times of Trustor's current address. Unless otherwise provided or required by law, if there is more than one Trustor, any notice given by Lender to any Trustor is deemed to be notice given to all Trustors.

**STATEMENT OF OBLIGATION FEE.** Lender may collect a fee, not to exceed the maximum amount permitted by law, for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Deed of Trust:

**Amendments.** This Deed of Trust, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Deed of Trust. No alteration of or amendment to this Deed of Trust shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Annual Reports.** If the Property is used for purposes other than Trustor's residence, Trustor shall furnish to Lender, upon request, a certified statement of net operating income received from the Property during Trustor's previous fiscal year in such form and detail as Lender shall require. "Net operating income" shall mean all cash receipts from the Property less all cash expenditures made in connection with the operation of the Property.

**Caption Headings.** Caption headings in this Deed of Trust are for convenience purposes only and are not to be used to interpret or define the provisions of this Deed of Trust.

**Merger.** There shall be no merger of the interest or estate created by this Deed of Trust with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Governing Law.** This Deed of Trust will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Deed of Trust has been accepted by Lender in the State of California.

**Choice of Venue.** If there is a lawsuit, Trustor agrees upon Lender's request to submit to the jurisdiction of the courts of San Diego County, State of California.

**Joint and Several Liability.** All obligations of Borrower and Trustor under this Deed of Trust shall be joint and several, and all references to Trustor shall mean each and every Trustor, and all references to Borrower shall mean each and every Borrower. This means that each Trustor signing below is responsible for all obligations in this Deed of Trust. Where any one or more of the parties is a corporation, partnership, limited liability company or similar entity, it is not necessary for Lender to inquire into the powers of any of the officers, directors, partners, members, or other agents acting or purporting to act on the entity's behalf, and any obligations made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Deed of Trust.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Deed of Trust unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Deed of Trust shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Deed of Trust. No prior waiver by Lender, nor any course of dealing between Lender and Trustor, shall constitute a waiver of any of Lender's rights or of any of Trustor's obligations as to any future transactions. Whenever the consent of Lender is required under this Deed of Trust, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Severability.** If a court of competent jurisdiction finds any provision of this Deed of Trust to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Deed of Trust. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Deed of Trust shall not affect the legality, validity or enforceability of any other provision of this Deed of Trust.

**Successors and Assigns.** Subject to any limitations stated in this Deed of Trust on transfer of Trustor's interest, this Deed of Trust shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Trustor, Lender, without notice to Trustor, may deal with Trustor's successors with reference to this Deed of Trust and the Indebtedness by way of forbearance or extension without releasing Trustor from the obligations of this Deed of Trust or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Deed of Trust.

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Deed of Trust. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Deed of Trust shall have the meanings attributed to such terms in the Uniform Commercial Code:

**Beneficiary.** The word "Beneficiary" means AmericanWest Bank, and its successors and assigns.

**Borrower.** The word "Borrower" means BAY VISTA METHODIST HEIGHTS, A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORTION and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Deed of Trust.** The words "Deed of Trust" mean this Deed of Trust among Trustor, Lender, and Trustee, and includes without limitation all assignment and security interest provisions relating to the Personal Property and Rents.

5255

## DEED OF TRUST
### (Continued)

Loan No: 1793

Page 9

**Default.** The word "Default" means the Default set forth in this Deed of Trust in the section titled "Default".

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., Chapters 6.5 through 7.7 of Division 20 of the California Health and Safety Code, Section 25100, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Deed of Trust in the events of default section of this Deed of Trust.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Deed of Trust.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Trustor's obligations or expenses incurred by Trustee or Lender to enforce Trustor's obligations under this Deed of Trust, together with interest on such amounts as provided in this Deed of Trust.

**Lender.** The word "Lender" means AmericanWest Bank, its successors and assigns.

**Note.** The word "Note" means the Note executed by BAY VISTA METHODIST HEIGHTS, A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORATION dated March 25, 2009 in the principal amount of $1,200,000.00 together with all renewals of, extensions of, refinancings of, modifications of and substitutions for the Note.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Trustor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Deed of Trust.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness; except that the words do not mean any guaranty or environmental agreement, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future leases, rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property together with the cash proceeds of the Rents.

**Trustee.** The word "Trustee" means UPF Washington Incorporated, whose address is 12410 E. Mirabeau, Ste 100, Spokane Valley, WA 99215 and any substitute or successor trustees.

**Trustor.** The word "Trustor" means TIERRA DEL REY, L.L.C..

5256

**DEED OF TRUST**
**(Continued)**

Loan No: 1793

Page 10

TRUSTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS DEED OF TRUST, AND TRUSTOR AGREES TO ITS TERMS.

TRUSTOR:

TIERRA DEL REY, L.L.C.

BAY VISTA METHODIST HEIGHTS, A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORATION, Member of TIERRA DEL REY, L.L.C.

By: _____
CHERLY R. LEE, Chief Executive Officer of BAY VISTA METHODIST HEIGHTS, A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORTION

By: _____
ARCHIE HUDSON JR., Chief Financial Officer of BAY VISTA METHODIST HEIGHTS, A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORTION

---

## CERTIFICATE OF ACKNOWLEDGMENT

STATE OF __California__ )
                                        ) SS
COUNTY OF __San Diego__ )

On __July 20__ , 20 _12_ before me, __Juanita S. Groves, Notary__
(here insert name and title of the officer)

personally appeared CHERLY R. LEE and ARCHIE HUDSON JR., who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____

JUANITA S. GROVES
Commission # 1831102
Notary Public - California
San Diego County
My Comm. Expires Feb 3, 2013     (Seal)

5257

## DEED OF TRUST
**Loan No: 1793** **(Continued)** **Page 11**

---

### (DO NOT RECORD)
### REQUEST FOR FULL RECONVEYANCE
(To be used only when obligations have been paid in full)

To: _____ __ ___ _____, Trustee

The undersigned is the legal owner and holder of all indebtedness secured by this Deed of Trust. All sums secured by this Deed of Trust have been fully paid and satisfied. You are hereby directed, upon payment to you of any sums owing to you under the terms of this Deed of Trust or pursuant to any applicable statute, to cancel the Note secured by this Deed of Trust (which is delivered to you together with this Deed of Trust), and to reconvey, without warranty, to the parties designated by the terms of this Deed of Trust, the estate now held by you under this Deed of Trust. Please mail the reconveyance and Related Documents to:

Date: . .    ____   __ ___   ___ ___   ___ .       Beneficiary: _____

By: _____

Its: _____

---

LASER PRO Lending, Ver. 12.2.0.003    Copr. Harland Financial Solutions, Inc. 1997, 2012.    All Rights Reserved.    - CA
V:\CFISBB\CFALPL\G01.FC  TR-2697 PR-2

5258

## EXHIBIT A

### DESCRIPTION OF THE LAND

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCEL 1:

THAT PORTION OF LOT 1 IN LOT 6 OF THE SUBDIVISION OF LOTS 6 AND 15 OF SUBDIVISION NO. 3 OF LOT 12, RANCHO EX-MISSION, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO THE MAP THEREOF NO. 1137, FILED IN THE OFFICE OF THE RECORDER OF SAID SAN DIEGO COUNTY ON JUNE 9, 1908, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT IN THE EAST LINE OF SAID LOT 1 WHICH IS NORTH 249.7 FEET FROM THE SOUTHEAST CORNER OF SAID LOT; THENCE WEST TO A POINT IN THE WEST LINE OF SAID LOT 1 WHICH IS NORTH 248.9 FEET FROM THE SOUTHWEST CORNER OF SAID LOT; THENCE NORTH ALONG SAID WEST LINE 124 FEET TO THE SOUTHWEST CORNER OF LAND CONVEYED TO A. P. GIGLIOTTI ET UX, BY DEED DATED JUNE 7, 1955 AND RECORDED IN BOOK 5734, PAGE 126 OF OFFICIAL RECORDS; THENCE EAST ALONG THE SOUTH LINE OF SAID GIGLIOTTI'S LAND 132 FEET TO THE SOUTHEAST CORNER THEREOF; THENCE NORTH ALONG THE EAST LINE OF SAID GIGLIOTTI'S LAND 124 FEET TO THE NORTHEAST CORNER THEREOF BEING A POINT IN THE NORTH LINE OF LAND CONVEYED TO MARY T. CAYLOR BY DEED DATED MARCH 29, 1943 AND RECORDED IN BOOK 1462, PAGE 275 OF OFFICIAL RECORDS; THENCE EAST ALONG SAID NORTH LINE OF CAYLOR'S LAND TO A POINT IN THE EAST LINE OF SAID LOT 1, WHICH IS 248 FEET NORTH OF THE POINT OF BEGINNING; THENCE SOUTH ALONG SAID EAST LINE 248 FEET TO THE POINT OF BEGINNING.

SAID LAND, OR A PORTION THEREOF, LIES WITHIN THE HELIX IRRIGATION DISTRICT.

*LEGAL DESCRIPTION CONTINUES ON THE FOLLOWING PAGE*

5259

**PARCEL 2:**

THAT PORTION OF LOT 1 IN LOT 6 OF THE SUBDIVISION OF LOTS 6 AND 15 OF SUBDIVISION NO, 3. LOT 12 OF RANCHO EX-MISSION IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP 1137 FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, JUNE 9, 1908, DESCRIBED AS FOLLOWS:

BEGINNING AT THE NORTHEAST CORNER OF SAID LOT 1; THENCE WEST ALONG LEMON AVENUE 294.7 FEET TO THE NORTHWEST CORNER OF SAID LOT 1; THENCE SOUTH ALONG KING AVENUE 124 FEET MORE OR LESS, TO A POINT WHICH IS NORTH 496.9 FEET FROM THE SOUTHWEST CORNER OF SAID LOT 1; THENCE EAST TO A POINT IN THE EAST LINE OF SAID LOT 1 WHICH IS NORTH 497.7 FEET FROM THE SOUTHEAST CORNER OF SAID LOT; THENCE NORTH ALONG SAID EAST LINE 124 FEET MORE OR LESS, TO THE POINT OF BEGINNING.

Assessor's Parcel No: 474-552-10

PROPERTY ADDRESS:  3675 King Street, La Mesa, California 91941

# Exhibit C

## to Declaration of Paul Taccone

In re Tierra del Rey LLC
Case No. 15-04253-LT11

620049-6

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

AP Mortgage Company
2615 Camino Del Rio South, Ste 200
San Diego, CA 92108

DOC# 2015-0165176

Apr 08, 2015  11:27 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES:  $20.00

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED National Loan Acquisitions Company ("Assignor") does hereby grant, bargain, sell, assign, transfer and convey to the following assignee ("Assignee"):

**AP Mortgage Company**
**2615 Camino Del Rio South, Ste 200, San Diego, CA 92108**

all of its right, title and interest in and to that certain Deed of Trust described below, which Deed of Trust encumbers the real property more particularly described therein, together with (and solely to the extent such Deed of Trust secures) the indebtedness currently due and to become due under the terms of the promissory note or evidence of indebtedness secured thereby.

This Assignment is made without recourse to Assignor and without representation or warranty by Assignor, express or implied.

Borrower Name(s):     Tierra Del Rey, LLC
Date of Instrument:    July 18, 2012
Date of Recording:     July 24, 2012
Document No.:          2012-0427715

Place of Recording:    San Diego County, CA

Dated the _3ᴿᴰ_ day of April, 2015.

National Loan Acquisitions Company

By: _____

Michael J. Henry
Vice President

620049-6 ² ᵗᶜ ⁱˡ

RECORDING REQUESTED BY
AND WHEN RECORDED MAIL TO:

AP Mortgage Company
2615 Camino Del Rio South, Ste 200
San Diego, CA 92108

DOC# 2015-0165177

Apr 08, 2015  11:27 AM
OFFICIAL RECORDS
Ernest J. Dronenburg, Jr.,
SAN DIEGO COUNTY RECORDER
FEES:  $20.00

## ASSIGNMENT OF ASSIGNMENT OF RENTS

FOR VALUE RECEIVED National Loan Acquisitions Company ("Assignor") does hereby grant, bargain, sell, assign, transfer and convey to the following assignee ("Assignee"):

**AP Mortgage Company**
**2615 Camino Del Rio South, Ste 200, San Diego, CA 92108**

all of its right, title and interest in and to that certain Assignment of Rents described below, which Assignment of Rents encumbers the real property more particularly described therein, together with (and solely to the extent such Assignment of Rents secures) the indebtedness currently due and to become due under the terms of the promissory note or evidence of indebtedness secured thereby.

This Assignment is made without recourse to Assignor and without representation or warranty by Assignor, express or implied.

| | |
|---|---|
| Borrower Name(s): | Tierra Del Rey, LLC |
| Date of Instrument: | July 18, 2012 |
| Date of Recording: | July 24, 2012 |
| Document No.: | 2012-0427716 |

Place of Recording:    San Diego County, CA

Dated the _3ʳᵈ_ day of April, 2015.

National Loan Acquisitions Company

By: _____
Michael J. Henry
Vice President

# Exhibit D

## to Declaration of Paul Taccone

In re Tierra del Rey LLC
Case No. 15-04253-LT11

## SETTLEMENT AND MUTUAL RELEASE OF ALL CLAIMS

THIS SETTLEMENT AGREEMENT (Settlement Agreement) is executed by and between SECURITY BUSINESS BANK OF SAN DIEGO (SBB) and BAY VISTA METHODIST HEIGHTS, A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORATION (Bay Vista).

### RECITALS

A.   Bay Vista is indebted to SBB on a loan evidenced by a promissory note dated March 25, 2009 for $1,200,000 (Note).   The Note is secured by a trust deed recorded in a 1ˢᵗ lien position (Lisbon TD) on property at 7108-7112 Lisbon Street, San Diego, CA 92114 (Lisbon Property).   The Note was not paid by Bay Vista on maturity on March 25, 2011 or thereafter.

B.   SBB contends: (a) the value of the Lisbon Property is now just $450,000; (b) Bay Vista is liable for the full amount due on the Note; and (c) it has the right to judicially foreclose on the Note and obtain a deficiency judgment against Bay Vista.

C.   On July 7, 2011, SBB filed a lawsuit against Bay Vista for judicial foreclosure, including seeking to recover a deficiency judgment, San Diego Superior Court, Case No. 37-2011-00094038 (Action).

D.   On August 26, 2011, Bay Vista filed its answer to the complaint in the Action, denying that the Note is past maturity and denying that SBB is entitled to a deficiency judgment.

E.   On September 9, 2011, in the Action, the Court granted SBB's motion for a pre-judgment writ of attachment and issued an attachment in the amount of $408,802 (Attachment).

F.   On October 26, 2011, pursuant to the Attachment, SBB attached property (Attachment Lien) owned by Bay Vista at 1000 S. Gilbert St., Hemet, CA 92543 (Gilbert Property).

G.   On February 24, 2012, the Court in the Action granted SBB's Motion for Summary Judgment resulting in a Judgment being entered on March 26, 2012 providing for SBB to judicially foreclose on the Lisbon Property through a Sheriff's Sale.

H.   SBB has scheduled a Sheriff's Sale of the Lisbon Property currently set for July 24, 2012 (Sheriff's Sale).

I.   SBB and Bay Vista (individually a "Party" and collectively the "Parties") dispute and deny the respective claims of each other and desire to resolve their claims without necessity of incurring further legal fees.

# AGREEMENT

It is the intention of the Parties that they release each other from all claims and liabilities concerning the above Recitals, including all claims and issues related to the Note and the Action. In consideration of the mutual covenants set forth below, the Parties agree as follows:

## *Overview of the Settlement*

1.  In exchange for Bay Vista providing additional real property security for the Note, bringing interest current and paying legal fees and costs, SBB agrees to extend the maturity date of the Note for five years, release the Attachment Lien and dismiss the Action.

## *Settlement Terms*

2.  In addition to the Lisbon TD, the Note shall be secured by a deed of trust (King TD) on property at 3675 King Street, La Mesa CA 91941 (King Property), owned by Tierra Del Rey, LLC (Tierra), a wholly owned subsidiary of Bay Vista.

3.  Concurrent with signing this Settlement Agreement, Bay Vista shall pay SBB the sum of $83,538.27, which shall be credited as follows: (a) to interest which has accrued on the Note through July 11, 2012 in the sum of $75,538.27; and (b) to costs of $8,000 which SBB has incurred and anticipates incurring to appraise the Lisbon and King Properties, and for title insurance, escrow costs, recording and related fees to complete the restructure of the Note. Further, at the time of signing the "Loan Documents", as defined in ¶4 below, Bay Vista shall pay SBB interest which accrues on the Note after July 11, 2012 through date of signing and any costs SBB incurs in excess of $8,000.

4.  Also concurrent with signing this Settlement Agreement: (a) Bay Vista shall sign a Change in Terms Agreement (CIT Agreement), a copy of which is attached as Exhibit 1; (b) Tierra shall sign a Commercial Security Agreement, a copy of which is attached as Exhibit 2; (c) Tierra shall sign the King TD, a copy of which is attached as Exhibit 3; (d) Tierra shall sign an Assignment of Rents, a copy of which is attached as Exhibit 4; and (e) Bay Vista and Tierra will sign all other loan and security documents reasonably requested by SBB in the ordinary course of completing a similar loan transaction. The Note, Business Loan Agreement dated March 25, 2009, CIT Agreement, Commercial Security Agreement, King TD, Assignment of Rents, Lisbon TD and all other documents required to be signed by this ¶4 shall collectively be referred to as the "Loan Documents."

5.  The amount set forth in the CIT Agreement is $1,246,222.09, which represent the principal balance owed on the Note of $1,199,802.74 plus legal fees and litigation costs incurred by SBB in filing and pursuing the Action of $46,419.35. The new interest rate on the Note, as set forth in the CIT Agreement is 6.25% per annum. The CIT Agreement contains all required payments on the Note. Except as modified by the CIT Agreement, all terms and conditions of the Note shall continue and remain in full force and effect.

2

*Lien Priority Contingency*

6.  This settlement is contingent on SBB obtaining title insurance showing the King TD is recorded in a 2ⁿᵈ lien position behind a first deed of trust in a principal amount not to exceed $4,540,000.

7.  Promptly after signing this Settlement Agreement and the Loan Documents (collectively the "Settlement Documents"), SBB shall record the King TD and obtain title insurance.  If SBB is advised by the title company that the King TD is not in a 2ⁿᵈ lien position, SBB shall promptly provide written notice to Bay Vista, which shall have 10 days from the date of written notice to resolve any other liens so that the King TD is recorded in a 2ⁿᵈ lien position.

8.  If Bay Vista cannot resolve the lien situation within 10 days of written notice so that the King TD is recorded in a 2ⁿᵈ lien position, SBB, at its sole discretion may choose to cancel this settlement by providing written notice to Bay Vista.  If SBB exercises this right, all of the following shall apply: (a) SBB shall reconvey the King TD; (b) this Settlement Agreement, as well as the CIT Agreement, Commercial Security Agreement, King TD and all other documents signed by Bay Vista as part of this settlement shall be cancelled; and (c) SBB may proceed with the Action, the same as existed immediately prior to signing this Settlement Agreement, including proceeding with and/or re-scheduling a Sheriff's Sale of the Lisbon Property..

*Resolution of the Action*

9.  As soon as Bay Vista signs this Settlement Agreement and the Loan Documents and pays all sums required by ¶3 above, SBB shall continue the Sheriff's Sale for at least two weeks.

10.  As soon as SBB obtains title insurance showing the King TD is in a 2ⁿᵈ lien position, SBB shall: (a) release its Attachment Lien on the Gilbert Property; (b) cancel the Sheriff's Sale of the Lisbon Property; and (c) file a dismissal without prejudice of the entire Action.

*Financial Information*

11.  Until the Note is paid in full: (a) Bay Vista shall provide to SBB all documents provided for and required by the Note and the Business Loan Agreement including updated and current financial statements and 2010 and 2011 tax returns (if the 2011 tax return has not yet been filed, it shall be produced within 45 days of filing); and (b) Tierra shall provide to SBB the following: (i) its 2011 tax return; (ii) once a year, due by January 31 for the preceding year, rent rolls and operating reports showing the income and expenses on the King Property; and (iii) its future Federal and State income tax returns, due within 45 days of filing.

12.  The required financial information and documents provided for in ¶11 above are a material part of this settlement and the failure of Bay Vista or Tierra to timely provide the required information and documents shall constitute a "Default" on the Note.  In the event of the failure to Bay Vista or Tierra to timely provide any of the documents required by the Note or

3

otherwise set forth in ¶11 above, SBB shall provide written notice, which notice may be sent by fax or email, to both the Chief Executive Officer of Bay Vista and to Dena Acosta, attorney for Bay Vista. As long as the required documents are produced within 10 days of written notice, Bay Vista shall not be in Default under the Note.

### *Release of Claims*

13.   Except as to the rights and claims created by the Settlement Documents, the Parties agree this Settlement Agreement is a complete release of all claims the Parties have against one another arising from the Note, and any and all other claims raised or which could be raised in the Action, and all events related thereto, including any claims which may or may not be known to the Parties, related in any way to the Note, upon executing this Settlement Agreement. Once executed, all Parties waive forever any and all rights to make any claims against the other, whether in contract, tort, or some other civil claim, concerning any and all actions and transactions which occurred prior to the date of executing this Settlement Agreement as may be related in any way to the Note. Nothing herein contained shall be construed as a waiver or modification of any rights of SBB under the Loan Documents.

14.   It is understood and agreed that this Settlement Agreement is a compromise of a doubtful and disputed claim as to each Party, and that no agreement herein contained is to be construed as an admission of liability on the part of the Parties hereby released, and that each releasee denies liability therefor, and intends merely to avoid any litigation.

15.   It is further understood and agreed that all rights under California Civil Code § 1542 and any similar law of any state or territory of the United States are hereby expressly waived. Said section reads as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release which if known by him or her must have materially affected his or her settlement with the debtor.

16.   Each Party has received independent legal advice from its attorneys with respect to the advisability of making the settlement provided for herein, with respect to the advisability of executing this Settlement Agreement, and with respect to the meaning of California Civil Code § 1542.

### *Misc Provisions*

17.   All Parties agree to cooperate and sign any and all documents necessary to accomplish the terms of this Settlement Agreement, including all documents referred to herein.

18.   This Settlement Agreement shall be effective as of the date indicated below.

19.   In the event of litigation to enforce any of the terms of this Settlement Agreement, the prevailing Party therein shall be entitled to, in addition to any relief awarded by a court, arbitrator, or other source, reasonable attorney's fees, and all costs of suit therein incurred.

4

20.  Each Party has made such investigation of the facts pertaining to this Settlement Agreement, and of all the matters pertaining thereto, as it deems necessary.

21.  This Settlement Agreement is entered into in California and shall in all respects be interpreted, enforced, and governed by the laws of the State of California.  The Parties intend that this Settlement Agreement shall be binding upon them in all other jurisdictions, and that the venue of any action to enforce this Settlement Agreement shall be San Diego County.  This Settlement Agreement is made pursuant to California Code of Civil Procedure § 664.6.

22.  No Party (nor any officer, agent employee, representative, or attorney of or for any Party), has made any statement or representation to any other Party regarding any fact relied upon in entering into this Settlement Agreement, and no Party relies upon any statement, representation, or promise of any other Party (or any officer, agent, employee, representative, or attorney for any other Party) in executing this Settlement Agreement, or in making the settlement provided for herein, except as expressly stated in this Settlement Agreement.

23.  This Settlement Agreement is the entire agreement between the Parties for the subject matter hereto and supersedes all prior and contemporaneous oral and written agreements and discussions.  This Settlement Agreement may be amended only by an agreement in writing.

24.  This Settlement Agreement is binding on and shall inure to the benefit of the Parties and their respective past, present and future attorneys, insurers, partners, associates, agents, employees, representatives, assigns, heirs, and successors-in-interest.

25.  If any condition or covenant herein contained is deemed to be invalid or void by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Settlement Agreement and shall in no way affect any other covenant or condition herein contained.

26.  Each Party has cooperated in the drafting and preparation of this Settlement Agreement.  Hence, in any construction to be made of this Settlement Agreement, the same shall not be construed against any Party.

27.  Cheryl R. Lee, who is signing this Settlement Agreement on behalf of Bay Vista, warrants and represents that she is Chief Executive Officer for Bay Vista and has been granted actual authority by the Board of Directors of Bay Vista to sign this Settlement Agreement and the Loan Documents and to bind Bay Vista to all terms stated in the Settlement Documents.

28.  Effective about July 2, 2012, AmericanWest Bank (AWB) purchased all of the stock of SBB and is now the sole owner of SBB and, SBB has merged into and been acquired by AWB and AWB is the successor in interest of all assets and rights of SBB.  Although this Settlement Agreement and the Loan Documents are all in the name of SBB, AWB shall be treated in all respects the same as SBB, with all rights of SBB to enforce the Settlement Documents.

29.   This Settlement Agreement may be executed in counterparts, and when each Party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.  Fax or email signatures of each Party shall be sufficient.

30.   The Parties further declare and represent that no promise, inducement or agreement not herein expressed, has been made to the other, and that this Settlement Agreement contains the entire agreement between the Parties with respect to the subject matter hereof, and that the terms of this Settlement Agreement are contractual and not a mere recital.

**THIS SETTLEMENT AGREEMENT** is deemed executed on July 19 2012.

BAY VISTA METHODIST HEIGHTS, a California Nonprofit Public Benefit Corporation

By: _____
Cheryl R. Lee, Chief Executive Officer

AMERICANWEST BANK as successor in interest to Security Business Bank of San Diego

By: _____
Gail Jensen-Bigknife, SBB Chief Credit Officer

APPROVED AS TO FORM AND CONTENT:

GRANT & ZEKO, APC

By: _____
Miles D. Grant,
Attorneys for SBB

_____
DENA MARIE ACOSTA,
Attorney for Bay Vista

H:\DOCS\19-710\L-Settlement\Settle Agt-02e.wpd

6

Exhibit 1

# EXHIBIT I

## CHANGE IN TERMS AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call/Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $1,246,222.09 | 07-18-2012 | 07-25-2017 | 1793 | 5631 | | 5JB | BJB |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "****" has been omitted due to text length limitations.

| | |
|---|---|
| **Borrower:** BAY VISTA METHODIST HEIGHTS, A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORATION 3944 MURPHY CANYON ROAD, SUITE C200 SAN DIEGO, CA 92123 | **Lender:** AmericanWest Bank Main Office 701 B Street Suite 100 San Diego, CA 92101 |

**Principal Amount: $1,246,222.09**        **Date of Agreement: July 18, 2012**

**DESCRIPTION OF EXISTING INDEBTEDNESS.**
Promissory Note #1793 dated March 25, 2009, in the original principal amount of $1,200,000.00 from Borrower to Lender.

**DESCRIPTION OF COLLATERAL.**
Deed of Trust dated March 25, 2009 recorded March 27, 2009 as Instrument number 2009-0156183 on real property commonly known as 7108 - 7112 Lisbon Street, San Diego, CA 92114.

**DESCRIPTION OF CHANGE IN TERMS.**
The maturity date is extended from March 25, 2011 to July 25, 2017.

Interest rate is changed from a variable rate at Wall Street Journal Prime plus 1.25% to a fixed rate of 6.25% effective July 18, 2012.

The principal balance in increased from $1,200,000.00 to $1,246,222.09.

Payments are changed from payments to six (6) interest only payments, followed by fifty-four (54) principal and interest payments amortized over twenty (20) years, as further described in paragraph below titled "PAYMENT".

All other terms and conditions remain the same.

Additional collateral in the form of a Deed of Trust and Assignment of Rents dated July 18, 2012 on real property commonly known as 3875 King Street, La Mesa, CA 91941 and Commercial Security Agreement dated July 18, 2012 are added.

**PROMISE TO PAY.** BAY VISTA METHODIST HEIGHTS, A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORATION ("Borrower") promises to pay to AmericanWest Bank ("Lender"), or order, in lawful money of the United States of America, the principal amount of One Million Two Hundred Forty-Six Thousand Two Hundred Twenty-Two & 09/100 Dollars ($1,246,222.09), together with interest on the unpaid principal balance from July 20, 2012, until paid in full.

**PAYMENT.** Borrower will pay this loan in full immediately upon Lender's demand. If no demand is made, Borrower will pay this loan in accordance with the following payment schedule, which calculates interest on the unpaid principal balances as described in the "INTEREST CALCULATION METHOD" paragraph using the interest rates described in this paragraph: 6 consecutive interest only payments, beginning August 25, 2012, with interest calculated on the unpaid principal balances using an interest rate of 6.250%; 53 monthly consecutive principal and interest payments of $9,110.42 each, beginning February 25, 2013, with interest calculated on the unpaid principal balances using an interest rate of 6.250%; and one principal and interest payment of $1,092,313.49 on July 25, 2017, with interest calculated on the unpaid principal balances using an interest rate of 6.250%. This estimated final payment is based on the assumption that all payments will be made exactly as scheduled, the amount of the final payment will be based on your actual remaining loan balances owed at that time. Unless otherwise agreed or required by applicable law, payments will be applied first to any accrued unpaid interest; then to principal; then to any late charges. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing.

**INTEREST CALCULATION METHOD.** Interest on this loan is computed on a 365/365 simple interest basis; that is, by applying the ratio of the interest rate over the number of days in a year, multiplied by the outstanding principal balance, multiplied by the actual number of days the principal balance is outstanding. All interest payable under this loan is computed using this method.

**PREPAYMENT; MINIMUM INTEREST CHARGE.** Borrower agrees that all loan fees and other prepaid finance charges are earned fully as of the date of the loan and will not be subject to refund upon early payment (whether voluntary or as a result of default), except as otherwise required by law. In any event, even upon full prepayment of this Agreement, Borrower understands that Lender is entitled to a minimum interest charge of $100.00. Other than Borrower's obligation to pay any minimum interest charge, Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments under the payment schedule. Rather, early payments will reduce the principal balance due and may result in Borrower's making fewer payments. Borrower agrees not to send Lender payments marked "paid in full", "without recourse", or similar language. If Borrower sends such a payment, Lender may accept it without losing any of Lender's rights under this Agreement, and Borrower will remain obligated to pay any further amount owed to Lender. All written communications concerning disputed amounts, including any check or other payment instrument that indicates that the payment constitutes "payment in full" of the amount owed or that is tendered with other conditions or limitations or as full satisfaction of a disputed amount must be mailed or delivered to: AmericanWest Bank, 701 B Street, Suite 100 San Diego, CA 92101.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the unpaid portion of the regularly scheduled payment.

**INTEREST AFTER DEFAULT.** Upon default, including failure to pay upon final maturity, the interest rate on this loan shall, if permitted under applicable law, be immediately increase by adding an additional 5.000 percentage point margin ("Default Rate Margin"). The Default Rate Margin shall also apply to each succeeding interest rate change that would have applied had there been no default. After maturity, or after this loan would have matured had there been no default, the Default Rate Margin will continue to apply to the final interest rate described in this Agreement.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Indebtedness.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower defaults under any loan, extension of credit, security agreement, purchase or sale agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's property or ability to perform Borrower's obligations under this Agreement or any of the Related Documents.

## CHANGE IN TERMS AGREEMENT
### (Continued)

| Loan No: 1793 | Page 2 |

**Environmental Default.** Failure of any party to comply with or perform when due any term, obligation, covenant or condition contained in any environmental agreement executed in connection with any Indebtedness.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Insolvency.** The dissolution or termination of Borrower's existence as a going business, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Indebtedness. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness evidenced by this Note.

**Change in Ownership.** Any change in ownership of twenty-five percent (25%) or more of the common stock of Borrower.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Indebtedness is impaired.

**Cure Provisions.** If any default, other than a default in payment is curable and if Borrower has not been given a notice of a breach of the same provision of this Agreement within the preceding twelve (12) months, it may be cured if Borrower, after Lender sends written notice to Borrower demanding cure of such default: (1) cures the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiates steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continues and completes all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance under this Agreement and all accrued unpaid interest immediately due, and then Borrower will pay that amount.

**ATTORNEYS' FEES; EXPENSES.** Lender may hire or pay someone else to help collect this Agreement if Borrower does not pay. Borrower will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees, expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), and appeals. Borrower also will pay any court costs, in addition to all other sums provided by law.

**GOVERNING LAW.** This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of California without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of California.

**CHOICE OF VENUE.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of San Diego County, State of California.

**COLLATERAL.** Borrower acknowledges this Agreement is secured by Deed of Trust dated March 25, 2009 recorded March 27, 2009 as Instrument number 2009-0156193 on real property commonly known as 7108 - 7112 Lisbon Street, San Diego, CA 92114 and Deed of Trust and Assignment of Rents dated July 18, 2012 on real property commonly known as 3675 King Street, La Mesa, CA 91941 and Commercial Security Agreement dated July 18, 2012.

**CONTINUING VALIDITY.** Except as expressly changed by this Agreement, the terms of the original obligation or obligations, including all agreements evidenced by or securing the obligation(s), remain unchanged and in full force and effect. Consent by Lender to this Agreement does not waive Lender's right to strict performance of the obligation(s) as changed, nor obligate Lender to make any future change in terms. Nothing in this Agreement will constitute a satisfaction of the obligation(s). It is the intention of Lender to retain as liable parties all makers and endorsers of the original obligation(s), including accommodation parties, unless a party is expressly released by Lender in writing. Any maker or endorser, including accommodation makers, will not be released by virtue of this Agreement. If any person who signed the original obligation does not sign this Agreement below, then all persons signing below acknowledge that this Agreement is given conditionally, based on the representation to Lender that the non-signing party consents to the changes and provisions of this Agreement or otherwise will not be released by it. This waiver applies not only to any initial extension, modification or release, but also to all such subsequent actions.

**FINANCIAL INFORMATION PROVISION.** On an annual basis, Borrower agrees to provide Lender with financial information (which may include rent roll and operating statements) during the term of this loan and any renewals or extensions thereof.

**BUSINESS LOAN AGREEMENT.** Reference is made to that certain Business Loan Agreement dated March 25, 2009, for additional terms and conditions.

**SUCCESSORS AND ASSIGNS.** Subject to any limitations stated in this Agreement on transfer of Borrower's interest, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Collateral becomes vested in a person other than Borrower, Lender, without notice to Borrower, may deal with Borrower's successors with reference to this Agreement and the Indebtedness by way of forbearance or extension without releasing Borrower from the obligations of this Agreement or liability under the Indebtedness.

**NOTIFY US OF INACCURATE INFORMATION WE REPORT TO CONSUMER REPORTING AGENCIES.** Please notify us if we report any inaccurate information about your account(s) to a consumer reporting agency. Your written notice describing the specific inaccuracy(ies) should be sent to us at the following address: AmericanWest Bank 701 B Street, Suite 100 San Diego, CA 92101.

**MISCELLANEOUS PROVISIONS.** This Agreement is payable on demand. The inclusion of specific default provisions or rights of Lender shall not preclude Lender's right to declare payment of this Agreement on its demand. If any part of this Agreement cannot be enforced, this fact will not affect the rest of the Agreement. Lender may delay or forgo enforcing any of its rights or remedies under this Agreement without losing them. Borrower and any other person who signs, guarantees or endorses this Agreement, to the extent allowed by law, waive any applicable statute of limitations, presentment, demand for payment, and notice of dishonor. Upon any change in the terms of this Agreement, and unless otherwise expressly stated in writing, no party who signs this Agreement, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan or

## CHANGE IN TERMS AGREEMENT
### (Continued)

Loan No: 1793                                                                          Page 3

release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Agreement are joint and several.

PRIOR TO SIGNING THIS AGREEMENT, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS AGREEMENT. BORROWER AGREES TO THE TERMS OF THE AGREEMENT.

BORROWER:

BAY VISTA METHODIST HEIGHTS, A CALIFORNIA NONPROFIT PUBLIC BENEFIT CORPORTION

By: _____                     By: _____
CHERLY R. LEE, Chief Executive Officer of BAY                ARCHIE HUDSON JR., Chief Financial Officer of
VISTA   METHODIST   HEIGHTS,   A   CALIFORNIA                BAY VISTA METHODIST HEIGHTS, A CALIFORNIA
NONPROFIT PUBLIC BENEFIT CORPORTION                          NONPROFIT PUBLIC BENEFIT CORPORTION

LASER PRO Lending, Ver. 15.2.0.003  Copr. Harland Financial Solutions, Inc. 1997, 2012  All Rights Reserved.  - CA  V:\CFI\BSI\CFI\LPL\D20C.FC  TR-8407  PR-2